| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| **NORRIS, McLAUGHLIN & MARCUS, P.A.**<br>Morris S. Bauer, Esq.<br>Joseph R. Zapata, Jr., Esq.<br>Attorneys for the Debtor/Debtor-In-Possession<br>721 Route 202-206, Suite 200<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700 | |
| In Re:<br><br>PARADIGM EAST HANOVER, LLC,<br><br>                  Debtor. | |

Case No.:  14-25017 (DHS)

Judge:  Hon. Donald H. Steckroth

Chapter:  11

## PLAN OF REORGANIZATION

The Debtor respectfully submits its Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

PARADIGM EAST HANOVER, LLC,

By: _____

DAVID M. KUSHNER
Managing Member of PCF East Hanover LLC
The Managing Member of the Debtor
and Debtor-in-Possession

DATED: October 21, 2014

# TABLE OF CONTENTS

**Page No.**

ARTICLE I INTRODUCTION ................................................................................ 1

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ...................................................................................... 1

    A.    General Overview ...................................................................... 1
    B.    Definitions.................................................................................. 1
    C.    Unclassified Claims ................................................................... 9
    D.    Classified Claims and Equity Interests ..................................... 11
    E.    Acceptance or Rejection of Plan ............................................... 16
    F.    Means of Effectuating the Plan ................................................. 16

ARTICLE III TREATMENT OF MISCELLANEOUS ITEMS ................................. 18

    A.    Executory Contracts and Unexpired Leases ............................. 18
    B.    Changes in Rates Subject to Regulatory Commission Approval............. 19
    C.    Retention of Jurisdiction ........................................................... 19
    D.    Procedures for Resolving Contested Claims.............................. 20
    E.    Notices under the Plan .............................................................. 20

ARTICLE IV EFFECT OF CONFIRMATION OF PLAN...................................... 21

    A.    Discharge .................................................................................. 21
    B.    Revesting of Property in the Debtor .......................................... 21
    C.    Modification of Plan ................................................................. 21
    D.    Post-Confirmation Conversion/Dismissal ................................ 22
    E.    Closing the Case ....................................................................... 22
    F.    Post-Confirmation Quarterly Fees ............................................ 22

ARTICLE V MISCELLANEOUS PROVISIONS REGARDING INTERPRETATION ........... 22

    A.    Entire Agreement ...................................................................... 22
    B.    Severability .............................................................................. 23
    C.    Successors and Assigns............................................................. 23

# ARTICLE I

## INTRODUCTION

Paradigm East Hanover, LLC ("Paradigm East Hanover" or the "Debtor") is a debtor in a chapter 11 bankruptcy case.    On July 23, 2014, Paradigm East Hanover commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code"). This document is the chapter 11 plan (the "Plan") proposed by the Debtor.  Sent to you in the same envelope as this document is the Disclosure Statement (the "Disclosure Statement") which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan.  In other words, the Debtor seeks to accomplish payments under the Plan by funding to be provided by an affiliate of the Debtor or its equity interest holders, while the Debtor proceeds to effectuate a sale of its properties.  The Effective Date of the proposed Plan is the date in which the order confirming the Plan becomes a Final Order.

# ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies Claims and Equity Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.    The Plan states whether each Class of Claims or Equity Interests is Impaired or Unimpaired.  The Plan provides the treatment each Class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.**  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the

meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.      **Administrative Expense(s)** shall mean any cost(s) or expense(s) of administration of the Chapter 11 Case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of the Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Debtor as proponent in connection with the proposal and confirmation of this Plan.

2.      **Allowed** when used as an adjective preceding the words "Claim" or "Equity Interest", shall mean any Claim against or Equity Interest of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim or Equity Interest against the Debtor, or, if no proof of Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in an amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for

2

purposes of computation of Distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3. **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4. **Allowed Unsecured Claim(s)** shall mean an Unsecured Claim(s) that is or has become an Allowed Claim.

5. **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6. **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7. **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8. **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9. **Chapter 11 Case** shall mean the case under chapter 11 of the Bankruptcy Code in which Paradigm East Hanover, LLC is the Debtor.

10. **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or

3

not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in Section 101(5) of the Bankruptcy Code.

11.      **Claimant** shall mean the holder of a Claim.

12.      **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

13.      **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

14.      **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

15.      **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering Confirmation of the Plan.

16.      **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter I 1 of the Bankruptcy Code.

17.      **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.  This includes all persons, corporations, partnerships, or business entities holding Claims against the Debtor.

18.      **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

19.      **Debtor** shall mean Paradigm East Hanover, LLC.

20.      **Disbursing Agent** shall mean the Debtor for the purpose of making all Distributions provided for under the Plan.

21.  **Disclosure Statement** means and refers to the Disclosure Statement and any amendments filed by the Debtor as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

22.  **Dotoli** shall mean Gustave T. Dotoli, the holder of a tax sale certificate against Lot 4.02.

23.  **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

24.  **EHMP** shall mean EHMP, LLC, the holder of a tax sale certificate against Lot 4.

25.  **Empire** shall mean Empire Tax Fund II, LLC, the holder of a tax sale certificate against Lot 5.01.

26.  **Equity Interest Holder** shall mean the holder of an Equity Interest in the Debtor.

27.  **Equity Interest** shall mean any interest of ownership in the Debtor.

28.  **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

29.  **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that Class.

30.  **Insider** shall have the same meaning ascribed to it in Section 101(31) of the Bankruptcy Code, which includes the general partner or person in control of the Debtor.

31.  **Lot 4** shall mean real property identified as Block 99, Lot 4 a/k/a 11 Mt. Pleasant Avenue, East Hanover, NJ 07936.

32.     **Lot 4.02** shall mean real property identified as Block 99, Lot 4.02 a/k/a 3 Farinella Drive, East Hanover, NJ 07936.

33.     **Lot 5.01** shall mean real property identified as Block 99, Lot 5.01 a/k/a 33 Mt. Pleasant Avenue, East Hanover, NJ 07936.

34.     **Net Sale Proceeds** means the sale proceeds received by the Debtor from the sale of Lot 4, Lot 4.02 and/or Lot 5.01 as the case may be, after payment of all closing costs, including broker's commissions and closing adjustments, payment of any real estate taxes associated with the respective lot, payment of any and all liens on the respective lot, and payment of any and all unpaid post-petition claims relating to the respective lot, as the case may be.

35.     **New Jersey Tax Sale** Law means N.J.S.A. 54:5-1 et seq.

36.     **Outstanding Principal Portion of the Stated Redemption Amount** means that portion of the Stated Redemption Amount referenced by the Township of East Hanover as the outstanding "principal", which with respect to the holders of tax sale certificates reflects the actual amount of monies that such holder paid to the Township of East Hanover.

37.     **Participants** means the 25 individuals, who contributed monies for the Paradigm Credit Corp. loan to East Hanover Tarragon, LLC, which loan was secured by a mortgage on the Properties and which loan was foreclosed with the Properties being titled to the Debtor subject to the liability owing to Paradigm Credit Corp. as agent for the Participants.

38.     **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

39.     **Petition Date** shall mean July 23, 2014, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

40.    **Plan** shall mean this Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

41.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507(a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under such subsection.

42.    **Priority Tax Creditor** shall mean a Creditor holding a Priority Tax Claim.

43.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

44.    **Proceedings** shall mean the Chapter 11 Case of the Debtor.

45.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Bankruptcy Court entered under Sections 327, 328, 330 or 503(b) of the Bankruptcy Code.

46.    **Professional Claim** means and refers to a Claim by any and all Professional Persons as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

47.    **Properties** means Lot 4, Lot 4.02 and Lot 5.01.

48.    **Proponent** means the Debtor.

49.    **Redemption Balance** means in the case of Classes 2, 3 and/or 4 the amount remaining due to each such Class 2, 3 and/or 4 Claimant after having received the 10% lump sum payment to be applied to the Outstanding Principal Portion of the Stated Redemption Amount as of the Effective Date.

50.    **Reorganized Debtor** means the Debtor after confirmation of the Plan.

51.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

52.    **Stated Redemption Amount** shall mean the total alleged amount quoted by the Township of East Hanover as the redemption amount on a particular outstanding tax certificate pursuant to New Jersey Tax Laws; provided, however, notwithstanding the use of such amount for purposes of this Plan, the Debtor shall retain the right to dispute the Stated Redemption Amount and adjust the Allowed Amount of the Claim of any Creditor herein based on the outcome of such contest.

53.    **Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for the Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claims" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

54.    **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein.  The words "herein", hereof', "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover some terms defined herein are defined in the section in which they are used.

### C.      Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

### 1.      Administrative Expenses and Fees

Administrative Expenses are claims for costs or expenses of administering the Debtor's Chapter 11 Case, which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Code requires that all Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

(a)      *Administrative Claims - General.*  All trade and service obligations of the Debtor, if any, incurred by the Debtor in the ordinary course of its business during the pendency of the Debtor's Chapter 11 proceeding shall be satisfied when they become due in the ordinary course of Debtor's business.

(b)      *Administrative Claims - Professional Claims.*

(i)      *Payment of Professional Claims.*  Except as otherwise provided herein, all Professional Claims shall be paid by the Debtor in full (a) upon the later of (i) the Effective Date, (ii) the entry of an order allowing such administrative expense claim, or (b) thereafter upon such other terms as may be mutually agreed upon between the Debtor and the holder of such Professional Claim.

(ii)      *Post-Confirmation Date Retention and Payment of Fees.*  Upon the Effective Date, any requirement that Professional Persons comply with Sections 327 through 331

9

of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate.

<u>Court Approval of Professional Compensation and Expenses Required:</u>

The Court must approve all professional compensation and expenses. Each Professional Person requesting compensation in the Chapter 11 Case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date.  Nothing herein shall prohibit each Professional Person from requesting interim compensation during the course of the Chapter 11 Case pending Confirmation of this Plan.  No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

**2.    Priority Tax Claims**

Priority Tax Claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a Section 507(a)(8) Priority Tax Claim receives the present value of such Claim in deferred cash payments, over a period not exceeding five years from the date of the order for relief. At the Debtor's election, and sole discretion, payment upon Priority Tax Claims may be made prior to the time frame prescribed by Section 1129(a)(9)(C) of the Bankruptcy Code.  The Debtor is unaware of any outstanding Priority Tax Claims and no Creditor has filed a proof of claim alleging to be a holder of a Priority Tax Claim.

**D.      Classified Claims and Equity Interests**

**1.      Classes of Secured Claims**

Secured Claims are Claims secured by liens on property of the Debtor's estate. The following represents all classes containing the Debtor's secured pre-petition Secured Claims and their treatment under this Plan:

**Class 1** - The Secured Claim of the Township of East Hanover.  The Class 1 Claim shall be paid in full on the Effective Date.  This Class is not impaired.

**Class 2** - The Secured Claim of EHMP.  The Class 2 Creditor will retain its lien on Lot 4 to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows: (i) on the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the earlier of the sale of Lot 4 or the twelfth (12th) and last quarterly payment, and (iv) amortization on a 10 year constant quarterly payment amortization schedule.  Event of Default: The following shall constitute an event of default relating solely to the Class 2 Claim:  (a) the failure to make any payment to the holder of the Class 2 Claim, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 2 Claim to the Debtor; and (b) the failure to make any payment to the holder of the Class 1 Claim or the Township of East Hanover for post-confirmation taxes with respect to Lot 4, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 2 Claim to the Debtor.  Remedies:  Upon the occurrence of an Event of Default and expiration of

any applicable cure period, (i) all obligations, including principal, accrued and unpaid interest shall accelerate and become immediately due and payable, and (ii) the holder of the Class 2 Claim shall be (a) permitted to pursue judgment against the Debtor, and/or (b) permitted to commence and proceed with a foreclosure action against Lot 4 in accordance with the New Jersey Tax Sale Law, more particularly, the Class 2 Claim shall be permitted to continue with its tax foreclosure action, Docket No. F-6546-13, pending in the Superior Court (said foreclosure action not to be dismissed for lack of prosecution during the term of repayment pursuant to this Plan, or enforcement upon default); provided, however, that the holder of the Class 2 Claim must first file a motion for an Order Setting Time for Redemption, which redemption date shall be no earlier than sixty (60) days after the expiration of the cure periods and the entry of judgment shall not occur earlier than ninety (90) days after the expiration of the cure periods.  The five (5) year escheatment period set forth in N.J.S.A. 54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is impaired.

**Class 3** – The Secured Claim of Empire.  The Class 3 Creditor will retain its lien on Lot 5.01 to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows: (i) on the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the earlier of the sale of Lot 5.01 or the twelfth (12th) and last quarterly payment, and (iv) amortization on a 10 year constant quarterly payment amortization

schedule.  Event of Default: The following shall constitute an event of default relating solely to

the Class 3 Claim:  (a) the failure to make any payment to the holder of the Class 3 Claim, which

is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder

of the Class 3 Claim to the Debtor; and (b) the failure to make any payment to the holder of the

Class 1 Claim or the Township of East Hanover for post-confirmation taxes with respect to Lot

5.01, which is not cured within fifteen (15) days after receipt of written notice via certified mail

by the holder of the Class 3 Claim to the Debtor.  Remedies:  Upon the occurrence of an Event of

Default and expiration of any applicable cure period, (i) all obligations, including principal,

accrued and unpaid interest shall accelerate and become immediately due and payable, and (ii)

the holder of the Class 3 Claim shall be (a) permitted to pursue judgment against the Debtor,

and/or (b) permitted to commence and proceed with a foreclosure action against Lot 5.01 in

accordance with the New Jersey Tax Sale Law, more particularly, the Class 3 Claim shall be

permitted to continue with its tax foreclosure action, Docket No. F-012672-13, pending in the

Superior Court (said foreclosure action not to be dismissed for lack of prosecution during the

term of repayment pursuant to this Plan, or enforcement upon default); provided, however, that

the holder of the Class 3 Claim must first file a motion for an Order Setting Time for

Redemption, which redemption date shall be no earlier than sixty (60) days after the expiration

of the cure periods and the entry of judgment shall not occur earlier than ninety (90) days after

the expiration of the cure periods.  The five (5) year escheatment period set forth in N.J.S.A.

54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is

impaired.

**Class 4** – The Secured Claim of Dotoli.  The Class 4 Creditor will retain its lien on Lot

4.02 to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows:

(i) on the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the earlier of the sale of Lot 4.02 or the twelfth (12th) and last quarterly payment, and (iv) amortization on a 10 year constant quarterly payment amortization schedule.  Event of Default: The following shall constitute an event of default relating solely to the Class 4 Claim:  (a) the failure to make any payment to the holder of the Class 4 Claim, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 4 Claim to the Debtor; and (b) the failure to make any payment to the holder of the Class 1 Claim or the Township of East Hanover for post-confirmation taxes with respect to Lot 4.02, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 4 Claim to the Debtor.  Remedies:  Upon the occurrence of an Event of Default and expiration of any applicable cure period, (i) all obligations, including principal, accrued and unpaid interest shall accelerate and become immediately due and payable, and (ii) the holder of the Class 4 Claim shall be (a) permitted to pursue judgment against the Debtor, and/or (b) permitted to commence and proceed with a foreclosure action against Lot 4.02 in accordance with the New Jersey Tax Sale Law, more particularly, the Class 4 Claim shall be permitted to continue with its tax foreclosure action, Docket No. F-015802-13, pending in the Superior Court (said foreclosure action not to be dismissed for lack of prosecution during the term of repayment pursuant to this Plan, or enforcement upon default); provided, however, that

the holder of the Class 4 Claim must first file a motion for an Order Setting Time for Redemption, which redemption date shall be no earlier than sixty (60) days after the expiration of the cure periods and the entry of judgment shall not occur earlier than ninety (90) days after the expiration of the cure periods.  The five (5) year escheatment period set forth in N.J.S.A. 54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is impaired.

2. **Class of Priority Non-Tax Claims**

Certain Priority Non-Tax Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment.  The following Class contains all of the Debtor's Section 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) Priority Unsecured Claims and its treatment under this Plan:

<u>Class 5</u> - Priority Non-Tax Claims.  Priority Non-Tax Claims, if any, shall be paid in full by the Debtor in cash on the Effective Date.  The Debtor is unaware of any Priority Non-Tax Claims and no Creditor has filed a proof of claim alleging to be a holder of a Priority Non-Tax Claim.  This Class is <u>not</u> impaired, and therefore is not entitled to vote on the Plan.

3. **Classes of General Unsecured Claims**

Unsecured Claims are not entitled to priority under Code Section 507(a).  These Claims are to be treated as follows:

<u>Class 6</u> - The Class 6 Claims consist of all Allowed General Unsecured Claims, including the claims of the Participants.  The Class 6 Claims will be paid a pro rata share of the Net Sale Proceeds received by the Debtor from the sale of Lot 4, Lot 4.02 and/or Lot 5.01, as the case may be.  In the event the Debtor does not sell Lot 4, Lot 4.02 and/or Lot 5.01 within the 3 year plan term, the Class 6 Claims will receive a 2-year unsecured term note aggregating 50% of the Allowed Amount of the General Unsecured Claims, which note will bear interest at prime

rate commencing on the 3rd anniversary of the Effective Date (the "Note Commencement Date")

with monthly only interest payments commencing on the 1st day of the 1st month following the

Note Commencement Date.  This Class is impaired.

### 4.      Class(es) of Equity Interest Holders

The members of this Class will be treated as follows:

**Class 7** - The Class 7 Claims consist of the Debtor's Equity Interest Holders.  All existing

Equity Interests will be retained by the Equity Interest Holders.  This Class is _not_ impaired, and

therefore is not entitled to vote on the Plan.

### E.      Acceptance or Rejection of Plan

Each Impaired Class of Creditors with Claims against the Debtor's estate shall be entitled

to vote separately to accept or reject the Plan.  A Class of Creditors shall have accepted the Plan

if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-

half in number of holders of the Allowed Claims of such class that have accepted or rejected the

Plan.  In the event that any Impaired Class of Creditors or Equity Interest Holders shall fail to

accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves

the right to request that the Bankruptcy Court confirm the Plan in accordance with Section

1129(b) of the Bankruptcy Code.

### F.      Means of Effectuating the Plan

### 1.      Funding for the Plan

The Plan will be funded by the following: The monies necessary for funding this Plan

will be derived from (i) a secured loan from JABE Management ("JABE"), an affiliate of the

members of the Debtor, that will cover any and all carrying costs associated with Lot 4, Lot 4.02

and/or Lot 5.01, as the case may be, which loan will bear interest a 5% per annum and be

satisfied from the sale of Lot 4, Lot 4.02 and/or Lot 5.01, as the case may be; (ii) the sale

proceeds from the disposition of Lot 4, Lot 4.02 and/or Lot 5.01, as the case may be; and (iii) in the event, the Debtor chooses not to sell Lot 4, Lot 4.02 and/or Lot 5.01, as the case may be, the revenues generated by the Debtor developing Lot 4, Lot 4.02 and/or Lot 5.01.

### 2.    Post-Confirmation Management

PCF East Hanover LLC will continue to manage the Debtor and will not be paid compensated for such management.

### 3.    Disbursing Agent

The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.

### 4.    Time and Method of Distribution

All Distributions to be made under the Plan shall be made in cash as soon as practicable after the Allowed Claims of Creditors are established and the claims reconciliation process is completed, but in no event prior to the Effective Date of the Plan.  Partial Distributions are permitted.

All Distributions to holders of Allowed Claims shall be made at the address of each holder as set forth in the Debtor's schedules or as set forth in any proof of claim filed by such Creditor.

In addition to the foregoing, the following provisions shall apply with respect to any Distribution:

(a)    No payment of fractions of units will be made under the Plan.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

(b)    Any holder of a Claim, who fails to collect any Distribution within six (6) months from the date monies are distributable to such Claimant, shall forfeit all rights thereto and any right to a future distribution, and such monies shall thereafter revert back to the Debtor.

(c)    The Debtor shall, in the Debtor's sole discretion, be entitled to deduct any federal or state withholding taxes from any payments with respect to Allowed Employee Compensation Claims or deliver with such Distribution an IRS Form 1099 reflecting the payment made.

(d)    With respect to Contested Claims or Equity Interests: Distribution with respect to and on account of Contested Claims or Claims which are unliquidated will be made when an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order.

## ARTICLE III

## TREATMENT OF MISCELLANEOUS ITEMS

### A.    Executory Contracts and Unexpired Leases

To the extent the Debtor is a party to an executory contract or unexpired lease, the Debtor reserves the right to file a motion to assume same on or before the Confirmation Hearing. Except as provided herein, on the Effective Date, any and all executory contracts or unexpired leases shall be deemed rejected; provided, however, the Debtor specifically reserves the right to assert that such contract is not executory and/or the other party breached same prior to the date hereof.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THE EARLIER OF THIRTY (30) DAYS AFTER THE EFFECTIVE DATE OR THE ENTRY OF AN ORDER BY THE COURT REJECTING THE SUBJECT EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory approval of its rates.

**C.      Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of

the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the

Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this

Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in

the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code

and with respect to the following matters:

(a)     To enable the Debtor to consummate the Plan and to resolve any disputes arising
with respect thereto.

(b)     To enable the Debtor or its assignee to consummate any and all proceedings
which it may bring to set aside liens or encumbrances, and to recover any
preferences, transfers, assets or damages to which it may be entitled under
applicable provisions of the Bankruptcy Code or other federal, state or local law.

(c)     To adjudicate all controversies concerning the classification or allowance of any
Claim.

(d)     To hear and determine all Claims arising from the rejection of any executory
contracts, including leases, and consummate the rejection and termination thereof
or with respect to any executory contracts to which an application for rejection or
termination is filed prior to the entry of the Confirmation Order.

(e)     To liquidate damages in connection with any disputed, contingent, or unliquidated
Claims.

(f)     To adjudicate all Claims to a security or ownership interest in any property of the
Debtor or in any proceeds thereof.

(g)     To adjudicate all Claims or controversies arising out of any purchases, sales, or
contracts made or undertaken by the Debtor during the pendency of the within
proceedings.

(h)     To recover all assets and properties of the Debtor wherever located.

     (i)     To make such orders as are necessary or appropriate to implement the provisions of the Plan, including the enforcement of the releases and injunctions set forth in the Plan.

If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized Debtor elects to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.**     **Procedures for Resolving Contested Claims.**

Objections to Claims and Equity Interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.  With respect to disputed Claims, or Equity Interests, the Disbursing Agent may create a contested claim reserve and deposit into such reserve cash on account of Claims that are contested so as to insure the occurrence of a *pro rata* Distribution to all Creditors upon the allowance or disallowance of Contested Claims.

**E.**     **Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if to the Debtor, addressed to: Morris S. Bauer, Esq., Norris McLaughlin & Marcus, P.A., P.O. Box 5933, Bridgewater, New Jersey 08807-5933 and David Kushner, c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168.

# ARTICLE IV

# EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that upon Confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. § 1141.  However, any liability imposed by the Plan will <u>not</u> be discharged.  If Confirmation of this Plan does not occur, this Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate.  The provisions of this Plan shall be binding upon the Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

### B.    Revesting of Property in the Debtor

Except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtor, free and clear of all Claims and Equity Interests.

### C.    Modification of Plan

The Debtor may modify the Plan at any time before Confirmation.  However, the Court may require a new disclosure statement or revoting on the Plan if the Debtor modifies the Plan before Confirmation.

The Debtor may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

### D.        Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under

Section 1112(b) of the Bankruptcy Code, after the Plan is confirmed, if there is a default in

performing under the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is

confirmed, then all property that had been property of the Chapter 11 estate, and that has not

been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay

will be reimposed upon the revested property only to the extent that relief from stay was not

previously granted by the Court during the Chapter 11 Case.

### E.        Closing the Case

The Debtor shall file a motion pursuant to Section 350 of the Bankruptcy Code seeking a

final decree at such time that substantial consummation has occurred. Notwithstanding the

closure of the Chapter 11 Case, nothing herein shall prevent the Debtor from completing or

instituting such proceedings as may be necessary for the enforcement of any claim of the Debtor

which may have existed against any third party prior to closing the Chapter 11 Case and which

may have not been enforced or prosecuted prior to the closing of the Chapter 11 Case.

### F.        Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the

Office of the United States Trustee post-confirmation until such time as the case is converted,

dismissed, or closed pursuant to a final decree.

## ARTICLE V

## MISCELLANEOUS PROVISIONS REGARDING INTERPRETATION

### A.        Entire Agreement

The Plan, as described herein, sets forth the entire agreement and understanding of the

parties hereto relating to the subject matter hereof and supersede all prior discussions and

documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed by the parties in writing.

**B.** **Severability**

In the event that any term or condition of this Plan shall be found to be unenforceable, same shall be deemed ineffective solely to the extent of such unenforceability and shall not invalidate or render unenforceable any other portion hereof, which shall continue in full force and effect as if the unenforceable term or condition had not been contained herein.

**C.** **Successors and Assigns**

The rights and obligations of any person named or referred to in the Plan shall be binding upon and shall inure to the benefit of, the successors and assigns of such person.