UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

**NORRIS, McLAUGHLIN & MARCUS, P.A.**
Morris S. Bauer, Esq.
Joseph R. Zapata, Jr., Esq.
Attorneys for the Debtor/Debtor-In-Possession
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, New Jersey 08807
(908) 722-0700

In Re:

PARADIGM EAST HANOVER, LLC,

Debtor.

Case No.:   14-25017 (DHS)

Judge:      Hon. Donald H. Steckroth

Chapter:    11

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING PLAN OF REORGANIZATION PROPOSED BY PARADIGM EAST HANOVER, LLC

Please read this disclosure statement carefully.  This disclosure statement contains information that may bear upon your decision to accept or reject the Plan of Reorganization (the "Plan").  The Debtor believes that the Plan is in the best interest of the creditors and that the Plan is fair and equitable.  The Debtor urges that the voter accept the Plan.

PARADIGM EAST HANOVER, LLC,

By:_____
DAVID M. KUSHNER
Managing Member of PCF East Hanover LLC
The Managing Member of the Debtor and
Debtor-in-Possession

DATED: October 21, 2014

## TABLE OF CONTENTS

**Page No.**

**ARTICLE I** INTRODUCTION ............................................................................ 1

    **A.**    Purpose of This Document................................................................ 1

    **B.**    Confirmation Procedures ................................................................. 3

        **1.**    Time and Place of the Confirmation Hearing ................................. 4

        **2.**    Deadline For Voting For or Against the Plan .................................. 4

        **3.**    Deadline For Objecting to the Confirmation of the Plan ................ 4

        **4.**    Identity of Person to Contact for More Information
            Regarding the Plan .......................................................................... 4

    **C.**    Disclaimer ........................................................................................ 4

**ARTICLE II** BACKGROUND ............................................................................ 5

    **A.**    Description and History of the Debtor's Business............................ 5

        **1.**    Formation and Ownership of the Debtor ........................................ 5

        **2.**    The Properties .................................................................................. 5

    **B.**    Principals/Affiliates of Debtor's Business........................................ 5

    **C.**    Management of the Debtor Before and After the Bankruptcy.................. 6

    **D.**    Events Leading to Chapter 11 Filing ............................................... 6

    **E.**    Significant Events During the Bankruptcy ...................................... 9

        **1.**    Commencement of Bankruptcy Proceeding .................................... 9

        **2.**    Employment of Professionals ......................................................... 9

        **3.**    Sale of Properties .......................................................................... 10

    **F.**    Current and Historical Financial Information.............................. 11

        **1.**    Assets and Liabilities .................................................................... 11

        **2.**    Historical Financial Data .............................................................. 12

        **3.**    Projected Recovery of Preferential or Fraudulent Transfers ........ 12

**ARTICLE III** SUMMARY OF THE PLAN OF REORGANIZATION .................................... 13

    **A.**    What Creditors and Interest Holders Will Receive Under the Proposed
        Plan ................................................................................................. 13

    **B.**    Unclassified Claims ....................................................................... 13

        **1.**    Administrative Expenses and Fees ............................................... 13

        **2.**    Priority Tax Claims........................................................................ 15

    **C.**    Classified Claims and Interests ..................................................... 15

        **1.**    Classes of Secured Claims............................................................ 15

        **2.**    Class of Priority Non-Tax Unsecured Claims .............................. 19

        **3.**    Classes of General Unsecured Claims .......................................... 20

        **4.**    Class(es) of Interest Holders ........................................................ 20

    **D.**    Means of Effectuating the Plan...................................................... 21

        **1.**    Funding for the Plan...................................................................... 21

        **2.**    Post-Confirmation Management.................................................... 21

        **3.**    Disbursing Agent .......................................................................... 21

i

**E.**   Other Provisions of the Plan ................................................................ 21
    **1.**   Executory Contracts and Unexpired Leases ................................. 21
    **2.**   Changes in Rates Subject to Regulatory Commission Approval ................................................................................... 22
    **3.**   Retention of Jurisdiction ............................................................ 22
    **4.**   Procedures for Resolving Contested Claims................................. 22
    **5.**   Effective Date ............................................................................ 22
**F.**   Tax Consequences of Plan ...................................................................... 23
**G.**   Risk Factors ......................................................................................... 23

ARTICLE IV   CONFIRMATION REQUIREMENTS AND PROCEDURES .......................... 24

**A.**   Who May Vote or Object ......................................................................... 25
    **1.**   Who May Object to Confirmation of the Plan.............................. 25
    **2.**   Who May Vote to Accept/Reject the Plan .................................... 25
    **3.**   Who is Not Entitled to Vote........................................................ 26
    **4.**   Who Can Vote in More Than One Class ...................................... 27
    **5.**   Vote Necessary to Confirm the Plan............................................ 27
    **6.**   Votes Necessary for a Class to Accept the Plan ........................... 27
    **7.**   Treatment of Nonaccepting Classes.............................................. 27
    **8.**   Request for Confirmation Despite Nonacceptance by Impaired Class(es) ..................................................................... 28
**B.**   Liquidation Analysis............................................................................... 28
**C.**   Feasibility............................................................................................. 29

ARTICLE V   EFFECT OF CONFIRMATION OF PLAN............................................... 30

**A.**   Discharge ............................................................................................. 30
**B.**   Revesting of Property in the Debtor ......................................................... 30
**C.**   Modification of Plan .............................................................................. 30
**D.**   Post-Confirmation Conversion/Dismissal ................................................ 31
**E.**   Post-Confirmation Quarterly Fees ........................................................... 31

## ARTICLE I

## INTRODUCTION

Paradigm East Hanover, LLC ("Paradigm East Hanover" or the "Debtor") is a debtor in a chapter 11 bankruptcy case.   On July 23, 2014, Paradigm East Hanover commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code").   Chapter 11 of the Bankruptcy Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.   The plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Paradigm East Hanover is the party proposing the Plan of Reorganization (the "Plan") sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN.   THE PLAN IS ANNEXED HERETO AS EXHIBIT "A."[1]

The Plan is a reorganizing plan.   In other words, the Debtor seeks to accomplish payments under the Plan by funding to be provided by an affiliate of the Debtor or its equity interest holders, while the Debtor proceeds to effectuate a sale of its Properties.   The Effective Date of the proposed Plan is the date in which the order confirming the Plan becomes a Final Order.

### A.      Purpose of This Document

This Disclosure Statement summarizes the information contained in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

---

[1] Unless other defined herein, capitalized terms used in this Disclosure Statement shall have the meanings ascribed to such terms in the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    (1)    **WHO CAN VOTE OR OBJECT,**

    (2)    **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

    (3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

    (4)    **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

    (5)    **THE EFFECT OF CONFIRMATION, AND**

    (6)    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court

("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each Equity Interest Holder of record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.     Confirmation Procedures**

<u>Persons Potentially Eligible to Vote on the Plan</u>

In determining acceptance of the Plan, votes will only be counted if submitted by a Creditor whose Claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.  The Ballot Form that you received does not constitute a proof of claim.  If you are uncertain whether your Claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102.  The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

### 1.    Time and Place of the Confirmation Hearing

The hearing at which the Court will determine whether to confirm the Plan will take

place on _____, at _____, in Courtroom ___, United States Bankruptcy

Court, District of New Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street,

Newark, New Jersey 07102.

### 2.    Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

and return the ballot to **Norris McLaughlin & Marcus, P.A., Attn:  Morris S. Bauer, Esq.,**

**721 Route 202-206, Suite 200, P. O. Box 5933, Bridgewater, New Jersey 08807-5933**.

Your ballot must be received by _____ or it will not be counted.

### 3.    Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon

Norris McLaughlin & Marcus, P.A., Attn: Morris S. Bauer, Esq., 721 Route 202-206, Suite 200,

P. O. Box 5933, Bridgewater, New Jersey 08807-5933 by _____.

### 4.    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact:

> Norris McLaughlin & Marcus, P.A.
> Attn: Morris S. Bauer, Esq.
> 721 Route 202-206
> P. O. Box 5933
> Bridgewater, New Jersey 08807-5933
> Tel. (908) 722-0700
> Attorneys for the Debtor

## C.    Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's books and

records. The information contained in this Disclosure Statement is provided by David Kushner,

the manager of PCF East Hanover LLC, the managing member of the Debtor.  The Debtor

represents that everything stated in the Disclosure Statement is true to the Debtor's best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

### ARTICLE II

### BACKGROUND

**A.     Description and History of the Debtor's Business**

**1.     Formation and Ownership of the Debtor**

The Debtor is a limited liability company under the laws of the State of New Jersey. The Debtor was formed by its members in June, 2009. As more particularly discussed below, the Debtor was formed as a special purpose vehicle to take title to Lot 4, Lot 4.02 and Lot 5.01.

**2.     The Properties**

The Debtor is the 80 percent (80%) owner of real property identified as Block 99, Lot 4 a/k/a 11 Mt. Pleasant Avenue, East Hanover, NJ 07936 ("Lot 4"), Block 99, Lot 4.02 a/k/a 3 Farinella Drive, East Hanover, NJ 07936 ("Lot 4.02"), and Block 99, Lot 5.01 a/k/a 33 Mt. Pleasant Avenue, East Hanover, NJ 07936 ("Lot 5.01", and with Lot 4 and Lot 4.02, the "Properties"). 77 Charters, Inc. ("Charters") maintains a 20% interest in the Properties. Based upon offers to purchase the Properties, the Debtor values Lot 4 and Lot 5.01, together, at approximately $8,700,000 and Lot 4.02 at $5,000,000.

**B.     Principals/Affiliates of Debtor's Business**

David Kushner is the manager of PCF East Hanover LLC, the managing member of the Debtor. PCF East Hanover LLC holds a 99% interest in the Debtor. The Debtor's other member is East Hanover Partners, LLC, which holds a 1% interest in the Debtor.

C.      **Management of the Debtor Before and After the Bankruptcy**

David Kushner, as manager of PCF East Hanover LLC oversaw the day-to-day operations of the Debtor pre-Petition and continues in such capacity post-Petition.  The Debtor anticipates that David Kushner will continue to oversee the Debtor's operations post-Confirmation.

D.      **Events Leading to Chapter 11 Filing**

        **Paradigm Credit Corp. Loan and the Deeds in Lieu of Foreclosure**

On February 7, 2008, Paradigm Credit Corp. ("Paradigm Credit") entered into a mortgage and security agreement ("Mortgage") with East Hanover Tarragon LLC ("Tarragon") in connection with a $12.5 MM loan (the "Loan") made to Tarragon.  The Mortgage was secured by the Properties.  Paradigm Credit obtained the loaned monies from 25 individual participants (the "Participants"), where Paradigm Credit acted as their agent in administering the Loan.  By an assignment of mortgage dated February 7, 2008, Paradigm Credit assigned a twenty percent (20%) interest in the Mortgage to Charters.

Tarragon subsequently defaulted on the Loan and by notice dated December 2, 2008, Paradigm Credit advised both Tarragon and TDC Hanover Holdings, LLC, manager of Tarragon and guarantor on the Loan ("TDC" and with Tarragon, the "Tarragon Parties") of the event of default.  On December 9, 2008, Paradigm Credit and the Tarragon Parties entered into a Pre-negotiation Agreement and Standstill Agreement whereby Paradigm Credit agreed not to take any action while the parties negotiated a forbearance agreement, with such forbearance agreement having been entered into by the parties on January 6, 2009 (the "Forbearance Agreement").

Tarragon subsequently defaulted under the terms of the Forbearance Agreement and on or about October 22, 2009, executed and delivered deeds in lieu of foreclosure transferring 80%

6

ownership in the property to the Debtor, specifically established several months earlier to take title to the properties, and 20% ownership to Charters.

### Tax Sale Certificates and the Tax Sale Foreclosure Actions

**(a)       Lot 4 Tax Sale Certificate and Tax Sale Foreclosure**

On December 3, 2009, a tax sale was conducted and a tax sale certificate was issued in connection with unpaid sewer and water service charges assessed as due and owing on Lot 4 for the tax year 2008.  The tax sale certificate for Lot 4 (the "Lot 4 Tax Sale Certificate") was purchased by U.S. Bank-Cust/Sass Muni V dtr  ("Sass") for $4,975.56 carrying an interest rate of 18%.  Upon information and belief, Sass and/or its successor, paid the future tax obligations accruing on Lot 4 following the issuance of the Lot 4 Tax Sale Certificate.

On February 25, 2013, Sass filed a tax sale foreclosure complaint in connection with the Lot 4 Tax Sale Certificate (the "Lot 4 Tax Sale Foreclosure Action").

On October 28, 2013, the Lot 4 Tax Sale Certificate appears to have been subsequently assigned to EHMP, LLC ("EMHP").

On June 24, 2014, EMHP filed a motion for entry of final judgment.  On June 26, 2014 final judgment was entered in favor of EHMP (the "EHMP Final Judgment").

On July 7, 2014, the Debtor filed opposition to the Court's entry of the EHMP Final Judgment asserting that the Court improperly entered the EHMP Final Judgment before the expiration of the time period to file opposition.  On July 14, 2014, the Court vacated the EHMP Final Judgment.  As a result, the Debtor retained title to Lot 4.

Despite the assignment of the Lot 4 Tax Sale Certificate to EHMP, on August 22, 2014, Sass filed a proof of claim in the Debtor's case for $2,558,653.30 in connection with the Lot 4 Tax Sale Certificate.

(b)      **Lot 5.01 Tax Sale Certificate and Tax Sale Foreclosure**

On December 2, 2010, a tax sale was conducted and a tax sale certificate was issued in connection with taxes assessed as due and owing on Lot 5.01 for the tax year 2009.  The tax sale certificate for Lot 5.01 (the "Lot 5.01 Tax Sale Certificate") was purchased by U.S. Bank-Custodian for Empire Tax Fund II, LLC ("Empire") for $50,004.38 carrying an interest rate of 18%.

On April 16, 2013, Empire filed a tax sale foreclosure complaint in connection with the Lot 5.01 Tax Sale Certificate.  A judgment has not been entered in connection with the Lot 5.01 Tax Sale Certificate.

As of the Petition Date, the redemption amount on the Lot 5.01 Tax Sale Certificate approximated $309,427.66.

(c)      **Lot 4.02 Tax Sale Certificate and Tax Sale Foreclosure**

On December 2, 2010, a tax sale was conducted and a tax sale certificate was issued in connection with taxes assessed as due and owing on Lot 4.02 for the tax year 2009.  The tax sale certificate for Lot 4.02 (the "Lot 4.02 Tax Sale Certificate") was purchased by Gustave T. Dotoli ("Dotoli") for $64,631.64 carrying an interest rate of 18%.

On May 9, 2013, Sass filed a tax sale foreclosure complaint in connection with the Lot 4.02 Tax Sale Certificate.  A judgment has not been entered in connection with the Lot 4.02 Tax Sale Certificate.

As of the Petition Date, the redemption amount on the Lot 4.02 Tax Sale Certificate approximated $428,199.65.

**Pre-Petition Efforts of the Debtor**

The Debtor obtained control of the Properties in October 2009.  Subsequent thereto, the Debtor attempted to market the properties and redeem the outstanding tax sale certificates, but,

until recently, had been unable to find any prospective purchasers due to poor marketing conditions.

In or about March, 2014, the Debtor received an offer from Mount Pleasant Enterprises, LLC ("Mount Pleasant") to purchase Lot 4 and Lot 5.01 for the sum of $8,700,000. A contract of sale (the "Contract of Sale") was executed between the Debtor and Mount Pleasant on July 8, 2014. Having received an offer to purchase the aforementioned lots that would have allowed the Debtor to redeem the tax sale certificates and make a significant distribution to the Participants, the Debtor filed an application with the Superior Court for the entry of an order to show case to restrain EHMP from entering final judgment on the Lot 4 Tax Sale Certificate and extending the redemption date. Unfortunately, such application was denied and EHMP proceeded with the foreclosure. Because the Debtor had insufficient time to close on a sale and redeem the tax sale certificates before a final judgment would be entered, the Debtor filed the chapter 11 case to proceed with the sale and preserve the value of the property for the benefit of the Debtor's creditors.

**E.     Significant Events During the Bankruptcy**

**1.     Commencement of Bankruptcy Proceeding**

On July 23, 2014, the Debtor filed a voluntary chapter 11 petition in order to preserve the value of its assets for the benefit of all of its creditors and other parties in interest.

**2.     Employment of Professionals**

By order of the Court dated September 2, 2014, the Debtor was authorized to retain the law firm of Norris McLaughlin & Marcus, P.A. as its counsel.

On September 22, 2014, the Debtor filed an application to retain Tannenbaum, Helpern, Syracuse & Hirschtritt, LLP ("THSH") as special real estate counsel in connection with the

anticipated sale of the Lot 4 and Lot 5.01, and also to assist with contract negotiations relating to the sale of Lot 4.02.

**3.      Sale of Properties**

Prior to the Petition Date, the Debtor entered into a Contract of Sale to sell Lot 4 and Lot 5.01 to Mount Pleasant for the sum of $8,700,000.  The Debtor has retained THSH to assist as special real estate counsel in connection with the sale of Lot 4 and Lot 5.01 under the Contract of Sale.  Pursuant to the Contract of Sale, the date of the closing is contingent upon: i) the initial publication of the municipal planning board's resolution granting the final site plan approval from such board and from The New Jersey State Department of Transportation, and (ii) expiration of certain property/land use inspection periods as set forth in the Contract of Sale. The Debtor has been recently informed that Mount Pleasant may be assigning the Contract of Sale and that the assignee will be requesting modifications.

With respect to Lot 4.02, the Debtor has received a post-petition offer to purchase Lot 4.02 from Avalon Bay Communities for $5,000,000, subject to contingencies on approvals from the municipality.  A contract of sale has not been executed by the parties in connection with such offer.

While at the present time the Debtor intends to proceed with the Contract of Sale and the offer from Avalon Bay Communities, the Debtor is contemplating retaining an auctioneer, Racebrook Marketing Concepts, LLC d/b/a Sheldon Good and Company, a nationally renowned real estate auction company, and conducting an auction, with the use of stalking horse bids.

**F.      Current and Historical Financial Information.**

**1.      Assets and Liabilities**

**Assets:**

Real Property: The Debtor is the 80 percent (80%) owner of the Properties.  77 Charters, Inc. maintains a 20% interest in the Properties.  Based upon offers to purchase the Properties, the Debtor values Lot 4 and Lot 5.01, together, at approximately $8,700,000 and Lot 4.02 at $5,000,000.

**Liabilities:**

Secured Claims:

Tax Collector of the Township of East Hanover: The Debtor is unaware of any pre-petition tax obligations owing to the Township of East Hanover relating to the Properties.

EHMP:  As set forth supra, despite the assignment of the Lot 4 Tax Sale Certificate to EHMP, on August 22, 2014, Sass filed a proof of claim in the Debtor's case for $2,558,653.30 in connection with the Lot 4 Tax Sale Certificate.  As of October 9, 2014, the Township of East Hanover lien redemption work sheet for Lot 4 provided that the redemption amount as of December 31, 2014 would be $2,788,309.59 of which $1,520,890.01 represented principal and the balance represented the redemption penalty of 2%, tax penalty, interest, recording fees, foreclosure fees and other fees.

Empire:  As of October 9, 2014, the Township of East Hanover lien redemption work sheet for Lot 5.01 provided that the redemption amount as of December 31, 2014 would be $351,692.07 of which $216,093.87 represented principal and the balance represented the redemption penalty of 6%, tax penalty, interest, recording fees, foreclosure fees and other fees.

Dotoli:  As of October 9, 2014, the Township of East Hanover lien redemption work sheet for Lot 4 provided that the redemption amount as of December 31, 2014 would be

$2,788,309.59 of which $1,520,890.01 represented principal and the balance represented the redemption penalty of 2%, tax penalty, interest, recording fees, foreclosure fees and other fees.

Administrative Claims: The Administrative Claims consist of the outstanding amounts owing to the Debtor's Chapter 11 counsel, which the Debtor anticipates will approximate $100,000 if confirmation is uncontested.

Priority Claims: To the best of the Debtor's knowledge, there are no Priority Claims.

General Unsecured Claims: The Debtor's scheduled unsecured claims approximate $12,590,662, which includes the unsecured obligation owing to the Participants, which claims aggregate in excess of $12.5 MM. The Participants are the 25 individuals that participated in the original $12.5 MM loan made by Paradigm Credit to Tarragon. Paradigm Credit was the servicer on the loan for the benefit of the Participants. Paradigm Credit subsequently foreclosed on the Properties and assigned the bid to the Debtor, who then took title to the Properties. As consideration for the assignment of the bid to the Debtor, the Participants became unsecured creditors of the Debtor. This procedure and structure were consistent with prior practices by Paradigm Credit when foreclosing on loans as a servicer for the benefit of the Participants, who were not seeking to be the holders of title to any property.

## 2. Historical Financial Data

The Debtor had no revenues since its inception.

## 3. Projected Recovery of Preferential or Fraudulent Transfers

The Bankruptcy Code provides that any payments made by the Debtor within ninety (90) days and within one (1) year as to insiders may be subject to recovery by the Debtor, which is commonly referred to as "avoidance actions." The Debtor is unaware of any possible Preferential or Fraudulent Transfer recoveries.

## ARTICLE III

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies Claims and Equity Interests in various Classes.  The Plan states whether each Class of Claims or Equity Interests is Impaired or Unimpaired.  The Plan provides the treatment each Class will receive.

**B.      Unclassified Claims**

Certain types of Claims are not placed into voting Classes.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following Claims in a Class.

**1.      Administrative Expenses and Fees**

Administrative Expenses are claims for fees, costs or expenses of administering the Chapter 11 Case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code.  The Code requires that all Administrative Expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

*(a)      Administrative Claims - General*.  All trade and service obligations of the Debtor, if any, incurred by the Debtor in the ordinary course of its business during the pendency of the Debtor's Chapter 11 proceeding shall be satisfied when they become due in the ordinary course of Debtor's business.

13

    *(b)     Administrative Claims - Professional Claims.*

    *Payment of Professional Claims*.  Except as otherwise provided herein, all Professional Claims shall be paid by the Debtor in full (a) upon the later of (i) the Effective Date, (ii) the entry of an order allowing such administrative expense claim, or (b) thereafter upon such other terms as may be mutually agreed upon between the Debtor and the holder of such Professional Claim. The Professional Claims will approximate $75,000 if confirmation is contested, excluding any auctioneer compensation.

    *Post-Confirmation Date Retention and Payment of Fees*.  Upon the Effective Date, any requirement that Professional Persons comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate.

    **Court Approval of Professional Compensation Required:**

    Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed.  The Professional Person in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application.  Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an Administrative Expense Claim.

    Each Professional Person who asserts a further Administrative Expense Claim that accrues before the Confirmation Date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than ninety (90) days after the Effective Date of the Plan.  Failure to file such an application timely shall result in the Professional Person's claim being forever barred and discharged.  Each and every other Person asserting an Administrative Expense Claim shall be entitled to file a motion for allowance of the asserted Administrative Expense Claim within

ninety (90) days of the Effective Date of the Plan, or such Administrative Expense Claim shall

be deemed forever barred and discharged.  No motion or application is required to fix the fees

payable to the Clerk's Office or Office of the United States Trustee.  Such fees are determined by

statute.

As indicated above, the Debtor may need to pay approximately $75,000 of

Administrative Expense Claims on the Effective Date of the Plan unless a claimant has agreed to

be paid later or the Court has not yet ruled on the Claim.

**2.      Priority Tax Claims**

Priority Tax Claims are certain unsecured income, employment and other taxes described

by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8)

Priority Tax Claim receive the present value of such Claim in deferred cash payments, over a

period not exceeding six years from the date of the assessment of such tax.  The Debtor is not

aware of any Priority Tax Claims.

**C.      Classified Claims and Interests**

**1.      Classes of Secured Claims**

Secured Claims are Claims secured by liens on property of the Debtor's estate.  The

following represents all classes containing the Debtor's secured pre-petition Secured Claims and

their treatment under this Plan:

**Class 1** - The Secured Claim of the Township of East Hanover.  The Class 1 Claim shall

be paid in full on the Effective Date.  The Debtor does not believe any pre-petition secured

obligations are owing to the Township of East Hanover.  This Class is not impaired.

**Class 2** - The Secured Claim of EHMP.  The Class 2 Creditor will retain its lien on Lot 4

to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows: (i) on

the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of

the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption

Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory

rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining

Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and

interest payments starting on the first day of the third month succeeding the Effective Date with a

balloon on the earlier of the sale of Lot 4 or the twelfth (12th) and last quarterly payment, and

(iv) amortization on a 10 year constant quarterly payment amortization schedule.   Event of

Default: The following shall constitute an event of default relating solely to the Class 2 Claim:

(a) the failure to make any payment to the holder of the Class 2 Claim, which is not cured within

fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 2

Claim to the Debtor; and (b) the failure to make any payment to the holder of the Class 1 Claim

or the Township of East Hanover for post-confirmation taxes with respect to Lot 4, which is not

cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the

Class 2 Claim to the Debtor.   Remedies:   Upon the occurrence of an Event of Default and

expiration of any applicable cure period, (i) all obligations, including principal, accrued and

unpaid interest shall accelerate and become immediately due and payable, and (ii) the holder of

the Class 2 Claim shall be (a) permitted to pursue judgment against the Debtor, and/or (b)

permitted to commence and proceed with a foreclosure action against Lot 4 in accordance with

the New Jersey Tax Sale Law, more particularly, the Class 2 Claim shall be permitted to

continue with its tax foreclosure action, Docket No. F-6546-13, pending in the Superior Court

(said foreclosure action not to be dismissed for lack of prosecution during the term of repayment

pursuant to this Plan, or enforcement upon default); provided, however, that the holder of the

Class 2 Claim must first file a motion for an Order Setting Time for Redemption, which

redemption date shall be no earlier than sixty (60) days after the expiration of the cure periods

and the entry of judgment shall not occur earlier than ninety (90) days after the expiration of the cure periods.   The five (5) year escheatment period set forth in N.J.S.A. 54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is impaired.

**Class 3** - The Secured Claim of Empire.  The Class 3 Creditor will retain its lien on Lot 5.01 to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows: (i) on the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the earlier of the sale of Lot 5.01 or the twelfth (12th) and last quarterly payment, and (iv) amortization on a 10 year constant quarterly payment amortization schedule.  Event of Default: The following shall constitute an event of default relating solely to the Class 3 Claim:  (a) the failure to make any payment to the holder of the Class 3 Claim, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 3 Claim to the Debtor; and (b) the failure to make any payment to the holder of the Class 1 Claim or the Township of East Hanover for post-confirmation taxes with respect to Lot 5.01, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 3 Claim to the Debtor.  Remedies:  Upon the occurrence of an Event of Default and expiration of any applicable cure period, (i) all obligations, including principal, accrued and unpaid interest shall accelerate and become immediately due and payable, and (ii) the holder of the Class 3 Claim shall be (a) permitted to pursue judgment against the Debtor, and/or (b) permitted to commence and proceed with a foreclosure action against Lot 5.01 in

17

accordance with the New Jersey Tax Sale Law, more particularly, the Class 3 Claim shall be permitted to continue with its tax foreclosure action, Docket No. F-012672-13, pending in the Superior Court (said foreclosure action not to be dismissed for lack of prosecution during the term of repayment pursuant to this Plan, or enforcement upon default); provided, however, that the holder of the Class 3 Claim must first file a motion for an Order Setting Time for Redemption, which redemption date shall be no earlier than sixty (60) days after the expiration of the cure periods and the entry of judgment shall not occur earlier than ninety (90) days after the expiration of the cure periods.  The five (5) year escheatment period set forth in N.J.S.A. 54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is impaired.

**Class 4** - The Secured Claim of Dotoli.  The Class 4 Creditor will retain its lien on Lot 4.02 to the extent of this Class' Allowed Claim and shall be paid its Allowed Claim as follows: (i) on the Effective Date, a lump sum payment equal to 10% of the Stated Redemption Amount as of the Effective Date to be applied to the Outstanding Principal Portion of the Stated Redemption Amount; (ii) the post-Effective Date Redemption Balance will continue to accrue at the statutory rate as set forth in and in accordance with the New Jersey Tax Sale Law on the remaining Outstanding Principal Portion of the Stated Redemption Amount; (iii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the earlier of the sale of Lot 4.02 or the twelfth (12th) and last quarterly payment, and (iv) amortization on a 10 year constant quarterly payment amortization schedule.  Event of Default: The following shall constitute an event of default relating solely to the Class 4 Claim:  (a) the failure to make any payment to the holder of the Class 4 Claim, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 4 Claim to the Debtor; and (b) the failure to make any payment to the holder of the

18

Class 1 Claim or the Township of East Hanover for post-confirmation taxes with respect to Lot 4.02, which is not cured within fifteen (15) days after receipt of written notice via certified mail by the holder of the Class 4 Claim to the Debtor.  Remedies:  Upon the occurrence of an Event of Default and expiration of any applicable cure period, (i) all obligations, including principal, accrued and unpaid interest shall accelerate and become immediately due and payable, and (ii) the holder of the Class 4 Claim shall be (a) permitted to pursue judgment against the Debtor, and/or (b) permitted to commence and proceed with a foreclosure action against Lot 4.02 in accordance with the New Jersey Tax Sale Law, more particularly, the Class 4 Claim shall be permitted to continue with its tax foreclosure action, Docket No. F-015802-13, pending in the Superior Court (said foreclosure action not to be dismissed for lack of prosecution during the term of repayment pursuant to this Plan, or enforcement upon default); provided, however, that the holder of the Class 4 Claim must first file a motion for an Order Setting Time for Redemption, which redemption date shall be no earlier than sixty (60) days after the expiration of the cure periods and the entry of judgment shall not occur earlier than ninety (90) days after the expiration of the cure periods.  The five (5) year escheatment period set forth in N.J.S.A. 54:5-33 shall be extended to a date that is two years from the maturity date.  This Class is impaired.

### 2.    Class of Priority Non-Tax Unsecured Claims

Certain priority Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of Claims are entitled to priority treatment as follows: the Code requires that each holder of such Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a class of unsecured priority Claim holders may vote to accept deferred cash payment of a value, as of the Effective Date, equal to the allowed amount of such Claims.

The following lists the Class of all of the Debtor's Section 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) Priority Unsecured Claims and their treatment under this Plan:

**Class 5** - Priority Non-Tax Claims.  Priority Non-Tax Claims, if any, shall be paid in full by the Debtor in cash on the Effective Date.  The Debtor is unaware of any Priority Non-Tax Claims and no Creditor has filed a proof of claim alleging to be a holder of a Priority Non-Tax Claim.  This Class is <u>not</u> impaired, and therefore is not entitled to vote on the Plan.

### 3.   Classes of General Unsecured Claims

Unsecured Claims are uncollateralized Claims not entitled to priority under Code Section 507(a).  The following identifies this Plan's treatment of the class containing all of Debtor's Unsecured Claims:

**Class 6** - The Class 6 Claims consist of all Allowed General Unsecured Claims, including the claims of the Participants.  The Class 6 Claims will be paid a pro rata share of the Net Sale Proceeds received by the Debtor from the sale of Lot 4, Lot 4.02 and/or Lot 5.01.  In the event the Debtor does not sell Lot 4, Lot 4.02 and/or Lot 5.01 within the 3 year plan term, the Class 6 Claims will receive a 2-year unsecured term note aggregating 50% of the Allowed Amount of the General Unsecured Claims, which note will bear interest at prime rate commencing on the 3rd anniversary of the Effective Date (the "Note Commencement Date") with monthly interest only payments commencing on the 1st day of the 1st month following the Note Commencement Date.  This Class is impaired.

### 4.   Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (*i.e.*, equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following

identifies the Plan's treatment of the class of interest holders:

**Class 6** - The Class 6 Claims consist of the Debtor's Equity Interest Holders.  All existing

Equity Interests will be retained by the Equity Interest Holders.  This Class is <u>not</u> impaired, and

therefore is not entitled to vote on the Plan.

**D.    Means of Effectuating the Plan**

**1.    Funding for the Plan**

The Plan will be funded by the following: The monies necessary for funding this Plan

will be derived from (i) a secured loan from JABE Management ("JABE"), an affiliate of the

members of the Debtor, which loan will bear interest a 5% per annum and be satisfied from the

sale of Lot 4, Lot 4.02 and/or Lot 5.01, as the case may be; (ii) the sale proceeds from the

disposition of the Properties; and (iii) in the event, the Debtor chooses not to sell any or all of the

Properties, the revenues generated by the Debtor developing the Properties.

**2.    Post-Confirmation Management**

PCF East Hanover LLC will continue to manage the Debtor and will not be paid

compensated for such management.

**3.    Disbursing Agent**

The Debtor shall act as the disbursing agent for the purpose of making all distributions

provided for under the Plan.

**E.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

To the extent the Debtor is a party to an executory contract or unexpired lease, the Debtor

reserves the right to file a motion to assume same on or before the Confirmation Hearing.

Except as provided herein, on the Effective Date, any and all executory contracts or unexpired

leases shall be deemed rejected; provided, however, the Debtor specifically reserves the right to assert that such contract is not executory and/or the other party breached same prior to the date hereof.  The Debtor is unaware of any executory contracts.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THE EARLIER OF THIRTY (30) DAYS AFTER THE EFFECTIVE DATE OR THE ENTRY OF AN ORDER BY THE COURT REJECTING THE SUBJECT EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2.        Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**3.        Retention of Jurisdiction**

The Court will retain jurisdiction as provided in Article III, Section C of the Plan.

**4.        Procedures for Resolving Contested Claims.**

Pursuant to D.N.J.LBR 3017-1, the Debtor or any other party in interest shall have 60 days subsequent to confirmation to object to the allowance of Claims.  The Debtor has reviewed the Claims that have been filed.  The Debtor does not intend on objecting to any Claims in Classes 3.

**5.        Effective Date**

The Plan will become effective on the Effective Date, which is when the order confirming the Plan becomes a final and non-appealable order.

F.     **Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally speaking, a holder of a Claim which is subject to taxation in the United States (a "Taxpayer-Claimant") will realize income or loss for federal and state income tax purposes if its Claim is paid, unless such income or loss has previously been recognized, to the extent that such a payment would have created income or loss if paid by the Debtor outside the jurisdiction of the Bankruptcy Court.

A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its claim under the Plan or in liquidation will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the claim exceeds its recovery, except to the extent that a loss with respect to such claim has previously been recognized.

There are complex issues which arise whenever debt is not repaid in full, and only a limited summary of the rules can be given here.  Taxpayer-Claimants should consult their own tax advisors as to the impact of these rules on their particular situation.

G.     **Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan.  You are encouraged to supplement this summary

with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Debtor believes that the Plan is viable and will meet all requirements of confirmation:

Acceptance of the Plan involves some risk. If a liquidation or protracted reorganization were to occur, the Debtor believes that the Unsecured Creditors would not receive a distribution and that only the tax sale certificate holders would receive payment in full. On the other hand, the Plan provides for a distribution to <u>all</u> Creditors with such payment possibly being made on the Effective Date or shortly thereafter if the Debtor is able to sell the Properties "as is". In the event that an immediate sale does not occur, it is conceivable that the creditors will receive a larger dividend if a prospective purchaser makes an offer with an approval contingency. This is not uncustomary in the real estate development industry, where a purchaser will close only when approvals are obtained and the approval process takes a year or two. In this instance, such purchasers typically offer more than "as is" purchasers.

## ARTICLE IV

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest

holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are not the only requirements for confirmation.

## A.     Who May Vote or Object

### 1.     Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.     Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a Claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a.     What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS NOVEMBER 25, 2014.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A Claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and

(2) no party in interest has objected to the Claim.   An interest is deemed allowed if it is

scheduled and no party in interest has objected to the interest.

### b.      What is an Impaired Claim/Interest

As noted above, an allowed claim or equity interest only has the right to vote if it is in a

class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or

contractual rights of the members of that class.   For example, a class comprised of general

unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their

claim plus interest.

In this case, the Debtor believes Classes 2, 3, 4 and 6 are impaired and that holders of

claims in this class are entitled to vote to accept or reject the Plan.   The Debtor believes that

classes 1, 5 and 7 are unimpaired and that holders of claims or interests in these classes therefore

do not have the right to vote to accept or reject the Plan.   Parties who dispute the Debtor's

characterization of their claim or equity interest as being impaired or unimpaired may file an

objection to the Plan contending that the Debtor has incorrectly characterized the Class.

### 3.      Who is Not Entitled to Vote

The following four types of claims are not entitled to vote.  (1) claims that have been

disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code

Section 507(a)(1), (a)(2), and (a)(8), and (4) claims in classes that do not receive or retain any

value under the Plan.   Claims in unimpaired classes are not entitled to vote because such classes

are deemed to have accepted the Plan.   Claims entitled to priority pursuant to Code Section

507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

and they are required to receive certain treatment specified by the Code.   Claims in classes that

do not receive or retain any value under the Plan do not vote because such classes are deemed to

have rejected the Plan.   EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE
PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an
unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for
the secured part of the claim and another ballot for the unsecured claim.

### 5.    Vote Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one
impaired class has accepted the Plan without counting the votes of any insiders within that class,
and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be
confirmed by "cramdown" on non-accepting classes, as discussed later in Article IV, Section A,
sub-Section 8 hereof.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half in
number and at least two-thirds in dollar amount of the allowed claims that actually voted, voted
in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least
two-thirds in amount of the allowed interest-holders of such class which actually voted, voted to
accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court
may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required
by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of
the Plan is commonly referred to as "cramdown".  The Code allows the Plan to be "crammed
down" on nonaccepting classes of claims or interests if it meets all consensual requirements

except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate

unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the

Plan as referred to in 11 U.S.C. Section 1129(b) and applicable case law.

### 8.      Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this Plan by cramdown on

Impaired Classes if any of these Classes do not vote to accept the Plan.

### B.      Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation

analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

holder must receive or retain under the Plan, property of a value not less than the amount that

such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the

Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee.  Secured

creditors are paid first from the sale proceeds or properties on which the secured creditor has a

lien.   Administrative claims are paid next.   Next, unsecured creditors are paid from any

remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same

priority share in proportion to the amount of their allowed claims.  Finally, interest holders

receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors

and interest holders who do not accept the Plan will receive at least as much under the Plan as

such holders would receive under a Chapter 7 liquidation.  The Debtor maintains that this

requirement is met because there would be no funds available to pay Administrative Claims and

the Claims of Unsecured Creditors upon the liquidation of the assets in the event the Chapter 11

Case is converted to Chapter 7.  Annexed hereto as Exhibit "B" is a liquidation analysis that demonstrates that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

## C.      Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The Debtor believes that this aspect of the feasibility requirement is met by the proposed funding from JABE, which will pay <u>all</u> obligations that are required to be paid under the Plan on the Effective Date. Annexed hereto as Exhibit "C" is the anticipated Sources and Uses for payment of the Effective Date obligations.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make required Plan payments.  To the extent the Debtor will be paying Claims in the future, such Claims will be paid from JABE and the sale of Lot 4, Lot 4.02 and/or Lot 5.01. Annexed hereto as Exhibit "D" are projections for the Debtor covering the life of the Plan reflecting required Plan payments based on the assumption that the Properties are not sold or there is no refinancing during the term of the Plan.  Notwithstanding this assumption, the Debtor's intention is to sell the Properties as soon as practicable.

With respect to JABE, JABE is a privately owned company by David Kushner and Jeffrey Meshel, two members of the Debtor.  JABE manages a real estate portfolio consisting of

6 real properties having an aggregate value of $47MM with no liabilities.  JABE's monthly cash flow approximates $150,000.  At the confirmation hearing, the Debtor will present evidence of JABE's ability to fund all required Plan payments and to satisfy going-forward obligations of the Debtor.  Accordingly, the Debtor believes, on the basis of the foregoing, that the Plan is feasible.

**ARTICLE V**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

The Plan provides that upon Confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. § 1141.  However, any liability imposed by the Plan will <u>not</u> be discharged.  If Confirmation of the Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate. The provisions of the Plan shall be binding upon the Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

**B.      Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtor, free and clear of all Claims and Equity Interests.

**C.      Modification of Plan**

The Debtor may modify the Plan at any time before Confirmation.  However, the Court may require a new disclosure statement or revoting on the Plan if the Debtor modifies the Plan before Confirmation.

30

The Debtor may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

**D.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Case under Section 1112(b) of the Bankruptcy Code, after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b) of the Bankruptcy Code.  If the Court orders the Chapter 11 Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this Chapter 11 Case.

**E.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.