# EXHIBIT A

Purchase and Sale Contract

between

Paradigm East Hanover, LLC

and

77 Charters, Inc.

as tenants in common, and together "Seller"


and

AvalonBay Communities, Inc., Buyer


As of December 2, 2014


Property:  Block 99, Lot 4.02, East Hanover, New Jersey ("Municipality")

[1005158-2]

## TABLE OF CONTENTS

1.    Description of Property

2.    Purchase Price; Deposit; Payment
      2.1.    Price; Survey Costs
      2.2.    Deposit
      2.3.    Payments at Closing
      2.4.    Liquidated Damages

3.    Time and Place of Closing
      3.1.    Closing

4.    Due Diligence
      4.1.    Investigation and Termination
      4.2.    Indemnification

5.    Contingencies to Buyer's Obligations
      5.1.    Definitions
      5.2.    Development Approvals
      5.3.    Contingency
      5.4.    Determination
      5.5.    Cooperation
      5.6.    Market Rate

6.    Title; Form of Conveyance
      6.1.    Marketable Title
      6.2.    Encumbrances
      6.3.    Curing Defects
      6.4.    Procedure

7.    Warranties and Representations by Seller
      7.1    Paradigm Representations
      7.2    Charters Representations
      7.3.    Closing Certificate
      7.4.    Indemnity

8.    Warranties and Representations by Buyer
      8.1.    Representations
      8.2.    Closing Certificate
      8.3.    Indemnity

9.    Closing Adjustments; Roll Back Taxes
      9.1.    Items to be Adjusted
      9.2.    Corrections
      9.3.    Conveyance Taxes
      9.4.    Survival

10.    Covenants by Seller
    10.1.    Covenants

11.    Additional Conditions to Buyer's Obligations
    11.1.    Conditions

12.    Closing Deliveries
    12.1.    Seller's Obligations
    12.2.    Buyer's Obligations

13.    Brokers

14.    Risk of Loss
    14.1.    Casualty
    14.2.    Taking

15.    Assignment
    15.1.    Assignment and Assumption

16.    Notices

17.    Escrow Agent
    17.1.    Delivery of Deposit
    17.2.    Alternative Actions
    17.3.    Liability
    17.4.    Modification
    17.5.    Expenses

18.    Environmental

19.    Miscellaneous
    19.1.    Governing Law; Assigns
    19.2.    Amendment
    19.3.    Memorandum of Contract
    19.4.    Possession
    19.5.    Cooperation
    19.6.    Counterparts
    19.7.    Captions
    19.8.    Waivers

    19.9.    Construction
    19.10    Publicity and Confidentiality
    19.11    Cure of Unperformed Obligations

# EXHIBITS

| | |
|---|---|
| 1 | Description of Property |
| 2.2 | Letter of Credit |
| 6.1 | Seller's Title Policy |
| 7.1(d) | Environmental Reports |
| 12.1(d)(i) and (ii) | Affidavits |
| 19.3 | Memorandum |
| 19.3A | Discharge of Memorandum |

This Purchase and Sale Contract ("Contract") is being made as of December 2, 2014 ("Effective Date") between Paradigm East Hanover, LLC ("Paradigm"), a New Jersey limited liability company, having an address at c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168 and 77 Charters, Inc. ("Charters"), a Delaware corporation, having an address at c/o SAT Investment FLP, 300 Southpoint Drive, Unit LPH-2, Miami Beach, Florida 33139 (Paradigm and Charters, collectively, "Seller") and AvalonBay Communities, Inc., a Maryland corporation, having an office at 517 Route One South, Suite 5500, Iselin, New Jersey 08830 ("Buyer").

## R E C I T A L S

A.     Seller is the owner of land described on Exhibit 1 annexed.

B.     On July 23, 2014 (the "Petition Date"), Paradigm commenced a voluntary case for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), which case was assigned Case No. 14-25017-DHS (the "Bankruptcy Case").

C.     Since the Petition Date, Paradigm has been in possession of its assets and in control of its business operations as a debtor in possession pursuant to the applicable provisions of the Bankruptcy Code.

D.     The approval of the Bankruptcy Court is required to consummate the sale and purchase of the Property (defined below) and the other transactions contemplated by this Contract.

E.     Seller desires to sell and Buyer desires to purchase from Seller the Property referred to in these Recitals.

NOW, THEREFORE, the parties hereto, for Ten ($10.00) Dollars and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, intending to be legally bound hereby, agree as follows:

1.     Description of Property.

Upon the terms and conditions herein set forth, Seller agrees to sell, and Buyer agrees to buy, the Property as more particularly described on Exhibit 1 annexed, together with all right, title and interest of Seller in and to any land lying in the bed of any streets (open or proposed) adjacent or abutting or adjoining such premises, together with all rights, privileges, rights of way and easements appurtenant to such premises, including, without limitation, all minerals, oil or gas on or under such premises, development rights, air rights, water rights, and any easements, rights of way or other interests in, on or under any lands, highways, alleys, streets, marshes, marshlands, waterways or rights of way abutting or adjoining such premises, and all buildings and other improvements located thereon (collectively the "Property").

2.      Purchase Price; Deposit; Payment.

2.1.    Purchase Price.

The purchase price ("Purchase Price") for the Property is Five Million ($5,000,000) dollars for a minimum of Two Hundred Fifty (250) "Market Rate Residential Units" (as hereinafter defined).

2.2.    Deposit.

(a)     As security for Buyer's performance hereunder, within five (5) business days after complete execution hereof, the "Deposit" (as hereinafter defined) shall be paid to First American Title Insurance Company ("Title Company"), as escrow agent ("Escrow Agent"), by an irrevocable letter of credit in the amount of Five Hundred Thousand ($500,000) dollars, naming the Title Company as beneficiary, drawn on a Federally-insured commercial bank, in the form of Exhibit 2.2 annexed ("Letter of Credit"). The Letter of Credit, any renewals and replacements thereof, the proceeds thereof, and any interest thereon are hereinafter referred to as the "Deposit."

(b)     Escrow Agent's duties and responsibilities hereunder are governed by the terms of Section 17 herein. Escrow Agent has executed this Contract for the purposes of evidencing its receipt of the Deposit and its agreement to comply with and perform its obligations as Escrow Agent hereunder.

(c)     In the event Escrow Agent receives notice of non-renewal of the Letter of Credit from the issuing bank and Buyer fails to replace the Letter of Credit with a substantially similar instrument within ten (10) days of such notice of non-renewal, notwithstanding any contrary notices, the Escrow Agent is irrevocably directed by the parties to draw on the Letter of Credit, unless a notice directing otherwise is signed by both Seller and Buyer and delivered to Escrow Agent. Escrow Agent hereby acknowledges that the word "you" in the last line of the first full paragraph on page 2 of the Letter of Credit means Seller.

2.3.    Payments at Closing.

(a)     The Purchase Price shall be paid by Buyer to Seller at the Closing by wire transfer of immediately available funds to an account designated in writing by Seller to Buyer prior to Closing.

(b)     The Purchase Price shall be increased or decreased, as the case may be, to account for all items to be apportioned or prorated pursuant to this Contract.

2.4.    Liquidated Damages.   If Buyer is required hereunder to purchase the Property and shall fail to do so and such failure constitutes a default hereunder, or if Buyer shall otherwise materially default under this Contract after notice from Seller and expiration of a reasonable cure period without cure having been made and Seller is entitled to and does terminate this Contract by reason thereof, the Deposit shall be retained by Seller as Seller's sole and exclusive remedy, which shall constitute full and complete liquidated damages and Seller

shall have no further recourse or remedy at law or in equity for any breach by Buyer hereunder. The parties agree that if Buyer defaults, the damages which Seller will suffer will be difficult, if not impossible, to determine with precision and the Deposit is a fair and reasonable estimate thereof.

3.      Time and Place of Closing

3.1.    Closing.

(a)     Subject to the other terms and provisions of this Contract, the closing ("the Closing") of the transactions contemplated hereby shall take place on or before the forty fifth (45th) day ("Closing Date") after Buyer obtains all "Development Approvals" (as hereinafter defined). Closing shall take place at the offices of Buyer's attorneys or at such other place within the State of New Jersey as Buyer may designate. Buyer shall give Seller not less than five (5) days' prior notice of the date for Closing.

(b)     Buyer shall have the sole election, at any time, to close without any or all Development Approvals having been obtained and to set a Closing Date by giving the Seller fifteen (15) days prior notice.

4.      Due Diligence

4.1.    Investigation and Termination.  (a) Seller acknowledges that Buyer may conduct an investigation of the Property, which may include examination of any and all documentation with respect to the Property, examination of title to the Property, conduct tests to determine the presence or absence of hazardous wastes, asbestos, radon and other similar materials and substances, determine the compliance of the Property with all applicable laws, rules, codes and regulations, conduct engineering inspections, test borings, soil tests, percolation tests, site evaluations and such other evaluations, inspections and tests as Buyer desires. Without limitation, Buyer shall have the right to engage in discussions and meetings with all governmental, quasi-governmental and other officials or representatives having jurisdiction over the issuance of the Development Approvals including without limitation those relating to utilities, sewer, and the like. Buyer shall conduct all investigation during the ninety (90) day period ("Due Diligence Period") commencing on the first business day after the date this Contract has been granted final, nonappealable approval by the Bankruptcy Court in form and substance reasonably acceptable to Buyer ("Bankruptcy Court Approval") and Seller has delivered to Buyer copies of all studies, reports and other work product regarding the Property. Notwithstanding any other provisions contained in this Contract, on or before the end of the Due Diligence Period, Buyer shall have the right in its sole and absolute discretion, either based upon its disapproval of any of the information it receives, or for any other reason whatsoever, or for no reason, to terminate this Contract. Buyer may terminate this Contract by providing notice to Seller ("Termination Notice") on or before the last day of the Due Diligence Period, in which event this Contract shall be deemed to have terminated and the Deposit shall be returned to Buyer forthwith. In such case, upon the return of the Deposit to Buyer, all rights and obligations of the parties hereto shall cease and this Contract shall be terminated and the parties shall be without further recourse hereunder, except for those rights and obligations, which are expressly

stated herein to survive the termination of this Contract.  In the event Buyer does not send a Termination Notice on or before the last day of the Due Diligence Period, then ipso facto, this Contract shall be deemed to have terminated, in which event the Deposit shall be returned to Buyer forthwith.  In such case, upon the return of the Deposit to Buyer, all rights and obligations of the parties hereto shall cease and this Contract shall be terminated and the parties shall be without further recourse hereunder, except for those rights and obligations, which are expressly stated herein to survive the termination of this Contract.

Buyer shall comply with all laws applicable to its investigations. Upon request Buyer shall provide Seller with copies of all non–proprietary reports prepared for Buyer. Buyer's right to perform Phase 2 environmental testing shall be based on recommendations of a consultant and limited to the applicable concerns.

(b)   In Buyer's sole and absolute discretion, Buyer may determine to proceed with a Phase 2 environmental study ("Phase 2") of the Property by giving Seller notice of such determination prior to the end of the Due Diligence Period.  In the event Buyer determines to proceed with the Phase 2, then the Due Diligence Period shall be deemed extended for an additional ninety (90) days from the date which the Due Diligence Period would otherwise expire solely for the purpose of Buyer conducting the Phase 2 and obtaining the results of the same.

(c)   In the event the Bankruptcy Court Approval is not obtained within sixty (60) days of the Effective Date ("Bankruptcy Court Approval Outside Date") either party may terminate this Contract by providing notice to the other party at any time after the Bankruptcy Court Approval Outside Date and prior to Bankruptcy Court Approval, in which event this Contract shall be deemed to have terminated and the Deposit shall be returned to Buyer forthwith.  In such case, upon the return of the Deposit to Buyer, all rights and obligations of the parties hereto shall cease and this Contract shall be terminated and the parties shall be without further recourse hereunder, except for those rights and obligations, which are expressly stated herein to survive the termination of this Contract.

4.2.   Indemnification.  From and after the date hereof, Seller shall make the Property available to Buyer and its agents, consultants and engineers for such inspections and tests as Buyer deems appropriate in connection with Buyer's due diligence.  Buyer shall indemnify, defend and hold Seller harmless from and against any and all injuries to persons or damage to the Property arising out of the negligent actions taken by Buyer, its agents, engineers or consultants, in connection with Buyer's performance of due diligence. Prior to entry onto the Property, Buyer shall deliver to Seller evidence that Buyer has obtained evidence of comprehensive general liability insurance coverage (including property damage) in an amount not less than Two Million ($2,000,000) dollars naming Seller as an additional insured.  The obligations contained herein shall survive Closing or the earlier termination of this Contract.

5.    Contingencies to Buyer's Obligations

   5.1. Definitions. For the purposes of this Contract, the following terms shall have the following meanings:

     (a) "Project" means the development on the Property of no less than Two Hundred Fifty (250) Market Rate Residential Units having such physical characteristics as desired by Buyer.

     (b) "Development Approvals" means all "Non-Appealable" (as hereinafter defined) final permits, approvals and third party actions necessary or advisable for the construction, development and intended use of the Project (including building permits), in form and substance acceptable to Buyer in its sole and absolute discretion and with no conditions imposed which are not acceptable to Buyer in its sole and absolute discretion, or if conditions are imposed (which are satisfactory to Buyer) the same have been satisfied. Without limitation of the foregoing, Development Approvals shall include and/or relate to preliminary and final site plan approval (on all governmental levels), all variances, rezoning, subdivision, stream encroachment, treatment works, soil conservation, utilities, curb cuts and wetlands, from all state, county, municipal and federal authorities (whether government, quasi-government, utility or otherwise) having jurisdiction over the development, construction and use of the Project and any and all developers agreements and the like imposing conditions and/or requirements on Buyer and/or the Project. Without limiting the foregoing, Development Approvals shall not be deemed to have been obtained unless there is available to the Property from streets and points immediately abutting the Property, and upon terms and conditions acceptable to Buyer, all utilities necessary to adequately service the Project. If any one or more moratoria should occur at any time during the pendency of this Contract affecting any utilities or other services impacting the Project, then the time periods for Buyer to close and purchase the Property shall be extended for the duration of such moratoria not to exceed 12 months. If Buyer enters into and/or defends any litigation for purposes of (i) satisfying any of the conditions referenced in this Contract or contained in any one or more of the permits or approvals referenced in this Contract and/or (ii) protecting or preserving any such permits or approvals, the time periods for Buyer to close and purchase the Property shall be extended for so long as necessary to finally resolve such litigation not to exceed 12 months. Any moratoria and litigation periods shall run concurrently for a maximum aggregate period of 12 months.

     (c) "Non-Appealable" means, with respect to any Development Approval, the expiration of all appeal periods from the granting or issuance of any such Development Approval without an appeal having been taken, or if such appeal has been taken, the appeal has been finally adjudicated or dismissed to Buyer's satisfaction without the availability of further appeals.

   5.2. Development Approvals. Buyer agrees, commencing on the expiration of the Due Diligence Period, to diligently pursue the obtaining of all Development Approvals for the Project.

5.3.   Contingency.

If Buyer has not obtained all of the Development Approvals by the date which is one (1) year after the expiration of the Due Diligence Period, as the same may have been extended pursuant to subsection (ii) below ("Approval Contingency Date"), then Buyer shall have the following rights:

(i)   To terminate this Contract by notice given by the Approval Contingency Date, in which event Buyer shall be entitled to the return of the Deposit and thereafter neither party hereto shall have any further obligations hereunder except for those which are expressly stated in this Contract to survive the termination of this Contract; or

(ii)   Provided Buyer has been proceeding diligently to obtain the Development Approvals, to extend the aforesaid period for two (2) additional extension periods of six (6) months each, the second such extension being subject to Buyer diligently pursuing Development Approvals during the first such extension. If Buyer elects to extend the time period to obtain the Development Approvals as aforesaid, and if Buyer has not obtained all Development Approvals by the expiration of the Approval Contingency Date, as so extended, then Buyer may terminate this Contract, by notice by the Approval Contingency Date, as so extended, in which event the provisions of subsection 5.3(i) above shall apply.

5.4.   Determination.   If at any time during the term of this Contract, Buyer determines in its reasonable discretion that it is unlikely that all Development Approvals in form and substance satisfactory to Buyer will be obtained for the Project or will be obtained by the Approval Contingency Date (Buyer having no obligation to extend the same), if Buyer is denied or not granted any such Development Approvals, or if any appeal is taken by a third party to the granting or issuance of any Development Approval, Buyer may terminate this Contract by written notice to Seller, whereupon the Deposit shall be returned to Buyer, this Contract shall terminate and all further rights and obligations of the parties hereto shall cease, except for those rights and obligations which are expressly stated to survive the termination of this Contract.

Seller may give Buyer notice in the event Seller determines that Buyer is not proceeding diligently to procure the Development Approvals, whereupon Buyer shall have twenty (20) days within which to commence proceeding diligently to procure the Development Approvals or Seller may terminate this Contract, the Deposit shall be returned to Buyer and all rights and obligations of the parties hereto shall cease, except for those rights and obligations which are expressly stated to survive the termination of this Contract.

If this Contract terminates for any reason other than breach by Seller, without charge Buyer, at Seller's option, shall assign to Seller Buyer's Development Approvals, non–proprietary plans and related materials prepared in connection with the Development Approvals and this Contract. If Seller does not elect to accept such assignment, Seller shall have no obligation concerning any such Buyer's Development Approvals, non–proprietary plans and related materials.

5.5.    Cooperation.  Seller shall cooperate with Buyer, at no cost to Seller, in Buyer's seeking to obtain the Development Approvals including without limitation regarding designation of the Property as an "area in need of redevelopment".  The foregoing cooperation may include, but is not limited to, attendance at and setting up of meetings with governmental and quasi-governmental officials, the signature by Seller, as owner of any applications, petitions, consents, or the like to be submitted by Buyer.  Seller shall sign any of the foregoing within five (5) business days after request by Buyer, failing which the Approval Contingency Date shall be extended by the number of days after five (5) and until Seller so signs and delivers.

5.6.    Market Rate.

(a)    "Market Rate Residential Unit" shall mean a non-age-restricted unit that can be offered at prevailing market rates to anyone without regard to income eligibility under any law or regulation.

(b)    "Non-Market Rate Residential Unit" shall mean a unit that does not fall within the definition of Market Rate Residential Unit.

6.    Title; Form of Conveyance.

6.1.    Marketable Title.  Exhibit 6.1 includes any and all title policies for the Property in Seller's possession.  At the Closing, the Property shall be conveyed by Seller to Buyer in fee simple absolute, by good and sufficient bargain and sale deed with covenants against grantor's acts ("Deed") running to Buyer.  The Deed shall convey title to the Property, insurable at standard rates by the Title Company, free from all encumbrances and encroachments from or on the Property except the encumbrances or restrictions as Buyer approves in accordance with Section 6.2 herein.  The Deed shall be in proper statutory form for recording and shall be duly executed and acknowledged and delivered by Seller at the Closing.  If prior to Closing, Buyer provides Seller with a survey of the Property prepared by a licensed New Jersey surveyor certified to Seller, then Seller shall include in Seller's deed, by way of quit claim only, a description of the Property which accords with such survey.

6.2.    Encumbrances.  If Buyer shall not have terminated this Contract pursuant to Section 4.1 herein, then Buyer shall, no later than 10 days prior to the last day of the Due Diligence Period, notify ("Title Exception Notice") Seller of any exceptions, defects or objections to title which Buyer claims are unacceptable to it in its sole and absolute discretion ("Unacceptable Exceptions") and shall simultaneously therewith furnish Seller's counsel with a copy of the title commitment procured by Buyer which sets forth said Unacceptable Exceptions. Failure to comply in full with the foregoing sentence shall constitute a waiver of any exceptions, defects or objections to title which could have been raised or noted by Buyer had Buyer procured a title commitment prior to the last day of the Due Diligence Period, and Buyer shall accept title to the Property subject to all exceptions, defects or objections to title which could have been raised or noted by Buyer had it procured a title commitment prior to the last day of the Due Diligence Period. Buyer shall not, regardless of whether it has given the Title Exception Notice, be bound by any liens or encumbrances created or arising (or recorded) after the date of the title

commitment obtained by Buyer and before Closing. At the Closing, Seller shall deliver title to the Property free and clear of any liens or encumbrances voluntarily created by Seller arising after the date of the title commitment obtained by Buyer and free and clear of all liens and encumbrances which can be cured by the payment of money only ("Monetary Exceptions") (i.e., mortgage liens, security interests and the like) regardless of whether Buyer notified or advised Seller of the same pursuant to the provisions of this Section.

      6.3.   Cure. Seller shall be obligated to cure, discharge and remove all Monetary Exceptions on or before the Closing Date (unless caused by Buyer) by paying the same in full and obtaining appropriate discharge or other like instruments which are in recordable form and which are sufficient to discharge and remove said Monetary Exceptions of record; provided, however, that in no event shall Seller be obligated to expend more than the Purchase Price to effectuate the same except to the extent that all or any portion of the Monetary Exceptions were voluntarily created. If the aggregate amount of the Monetary Exceptions exceeds the Purchase Price, then Buyer shall not be obligated to close title to the Property, shall have the right to terminate this Contract and receive back the Deposit, and provided that Seller has not, after the date hereof, voluntarily granted or created any Monetary Exceptions, neither party hereto shall have any further rights or obligations hereunder, except those rights or obligations that are expressly stated in this Contract to survive the termination of this Contract.

      6.4.   Procedure. If Buyer has given to Seller a Title Exception Notice, then Seller shall, within ten (10) days after its receipt of the same, notify Buyer ("Response Notice") whether or not Seller intends to take necessary action to attempt to cure or remove the same, and which notice shall set forth with specificity the action that Seller agrees to undertake. If Seller notifies Buyer that it does not intend to take any action to remove all of the objected to title exceptions, then Buyer shall have the right by notice given to Seller within twenty (20) days thereafter (x) to terminate this Contract, in which event Buyer shall be entitled to the return of the Deposit and thereafter neither party hereto shall have any rights or obligations hereunder except for those that are expressly stated in this Contract to survive the termination of this Contract; or (y) to accept title subject to the objected to exceptions without any reduction in the Purchase Price. If Seller notifies Buyer that it intends to take action to effectuate the removal of the objected to exceptions, then Seller shall be obligated to take all action of which it advised Buyer in the Response Notice that it would take. If, within ninety (90) days after Buyer's receipt of the Response Notice, Seller has not been able (or does not agree to do so prior to Closing), despite taking the actions set forth in the Response Notice, to remove, satisfy and discharge all objected to exceptions, within twenty (20) days thereafter Buyer shall have the right (i) to terminate this Contract, in which event Buyer shall be entitled to the return of the Deposit. Thereafter, neither party hereto shall have any further rights or obligations hereunder, except for those that are expressly stated in this Contract to survive the termination of this Contract; or (ii) to accept title subject to the objected to exceptions, without any reduction in the Purchase Price. Notwithstanding anything contained in this Section, Seller shall be obligated to remove, cure and discharge Monetary Exceptions as provided for in Section 6.3 of this Contract at or before Closing.

7.     Warranties and Representations by Seller.

7.1.     Paradigm Representations.     Paradigm hereby separately as to itself warrants and represents to Buyer, knowing and intending that Buyer is relying hereon in entering into this Contract and consummating the transactions contemplated hereby, that:

(a)     Paradigm is, and on the Closing Date shall be, an entity duly organized, validly existing and in good standing under the laws of the State of its organization and in good standing and qualified to do business in the State of New Jersey. Paradigm has full power and authority to enter into and perform this Contract and all documents, instruments and contracts entered into or to be entered into by it pursuant to this Contract and to carry out the transactions contemplated hereby. This Contract is, and all documents to be executed by Paradigm and delivered to Buyer at the Closing will be on the Closing Date, duly authorized, executed and delivered by Paradigm and all consents and approvals of third parties have been obtained. This Contract is, and all documents to be executed by Paradigm and delivered to Buyer at the Closing will be the legal, valid and binding obligations of Paradigm, enforceable in accordance with their respective terms will not violate any provisions of any agreement, judicial order or any other thing to which Paradigm is a party or to or by which Paradigm or the Property is subject or bound. Neither the execution and delivery of this Contract nor the consummation of the transactions contemplated by this Contract is subject to any requirement that Paradigm obtain any consent, license, approval or authorization of, or make any declaration or filing with, any governmental authority or third party. Notwithstanding the foregoing, Paradigm has disclosed to Buyer that it is presently engaged in the Bankruptcy Case all details and pleadings regarding which Paradigm will deliver to Buyer as part of Due Diligence.

(b)     Paradigm to its knowledge has not received any notice of any moratorium, condemnation proceeding or proceedings or agreement in the nature of eminent domain or for the dedication of any part of the Property to any public or quasi-public agency ("Taking") in connection with the Property; and no such proceeding or agreement is contemplated.

(c)     Without inquiry, and with no obligation for inquiry, Paradigm has no knowledge of assessments or special assessments (including, without limitation, assessments for municipal improvements) filed, pending or, to the best of Paradigm's knowledge, proposed against the Property or any portion thereof, including, without limitation, any street improvement or special district assessments.

(d)     Paradigm to its knowledge has never used, generated, processed, stored, released, discharged, transported, handled or disposed of any Hazardous Substance (as herein defined), on, in or in connection with the Property, and without inquiry, and with no obligation for inquiry, Paradigm has no knowledge of any prior owner or operator of the Property or anyone else having used, generated, processed, stored, released, discharged, transported, handled or disposed of any Hazardous Substance on or in the Property. Without inquiry, and with no obligation for inquiry, Paradigm has no knowledge of any Hazardous Substance being present or existing on, in, under, near or about the Property. Exhibit 7.1 (d) hereto lists all reports or writings in the possession (actual or constructive) of Paradigm with

respect to or which relate to the environmental condition of the Property and/or any surrounding properties. As used in this Contract, "Hazardous Substances" shall mean and include any and all chemical, substance, material, waste or component thereof which is now listed, defined or regulated as hazardous or toxic by or under any present federal, state or local law, statute, act, rule, regulation, requirement, order, directive, code or ordinance, and all amendments thereto, pertaining in any way to health, safety and/or the environment.

(e)     Without inquiry, and with no obligation for inquiry, Paradigm has no knowledge of any part of the Property having been used as a cemetery/burial ground.

(f)     Paradigm has not received any notice that any default or breach exists under any covenant, condition, restriction, right of way, easement or other encumbrance affecting any part of the Property and there is no fact or condition which would constitute such default or breach.

(g)     Except with respect to the Bankruptcy Case and actions to foreclose various tax sale certificates, there is not now pending, nor has there been threatened, any action, suit, or proceeding against or affecting Paradigm or the Property before or by any federal or state court, commission, regulatory body, administrative agency or other governmental body, domestic or foreign, wherein an unfavorable ruling, decision or finding may reasonably be expected to have a material adverse affect on the business or prospects of or on the condition or operations of the Property (including the use and development of the Property for multi-family residential and commercial purposes), or would interfere with Buyer's or Paradigm's ability to consummate the transactions contemplated by this Contract or in any case or in the aggregate have a material adverse affect, financial or otherwise, on the business or affairs of Paradigm. Notwithstanding the foregoing, Paradigm has disclosed to Buyer that it is presently engaged in the Bankruptcy Case.

(h)     Paradigm is not a "foreign person," as defined under Internal Revenue Code Section 1445.

(i)     There are no management, service, supply, broker, maintenance or other contracts with respect to or affecting the Property and which would be binding upon Buyer or the Property after the Closing.

(j)     Without inquiry, and with no obligation for inquiry, to Paradigm's knowledge, there are no storage tanks in, on, under or about the Property.

(k)     The Property is not subject to any roll back tax or any similar tax related to the discontinuance of any use to which the Property has been put.

(l)     Paradigm has not received any notice or notices of violation (or claimed violations) of any law, ordinance, order, statute, rule or regulation or any complaints, order, citation or notice with regard to, affecting or relating to the Property.

(m)    No appeals are currently pending with respect to real estate taxes for the Property.

(n)    Paradigm has not entered into any presently effective contract regarding the sale, conveyance, transfer or disposition of the Property (except for the within Contract).  Paradigm has not granted to anyone and no one possesses any option to purchase or right of first refusal to purchase the Property.  Paradigm has not entered into any occupancy agreement, lease or the like with respect to, and no one has any right to use or occupy, the Property.

(o)    No agreements and/or other instruments exist that contain cross-default, cross-collateralization or other provisions that could adversely affect the Property or Buyer's entitlements pursuant to this Contract.

7.2. Charters Representations.  Charters hereby separately as to itself warrants and represents to Buyer, knowing and intending that Buyer is relying hereon in entering into this Contract and consummating the transactions contemplated hereby, that:

(a)    Charters is, and on the Closing Date shall be, an entity duly organized, validly existing and in good standing under the laws of the State of its organization and in good standing and qualified to do business in the State of New Jersey.  Charters has full power and authority to enter into and perform this Contract and all documents, instruments and contracts entered into or to be entered into by it pursuant to this Contract and to carry out the transactions contemplated hereby.  This Contract is, and all documents to be executed by Charters and delivered to Buyer at the Closing will be on the Closing Date, duly authorized, executed and delivered by Charters and all consents and approvals of third parties have been obtained.  This Contract is, and all documents to be executed by Charters and delivered to Buyer at the Closing will be the legal, valid and binding obligations of Charters, enforceable in accordance with their respective terms will not violate any provisions of any agreement, judicial order or any other thing to which Charters is a party or to or by which Charters or the Property is subject or bound.  Neither the execution and delivery of this Contract nor the consummation of the transactions contemplated by this Contract is subject to any requirement that Charters obtain any consent, license, approval or authorization of, or make any declaration or filing with, any governmental authority or third party.

(b)    Charters to its knowledge has not received any notice of any Taking in connection with the Property; and no such proceeding or agreement is contemplated.

(c)    Without inquiry, and with no obligation for inquiry, Charters has no knowledge of assessments or special assessments (including, without limitation, assessments for municipal improvements) filed, pending or, to the best of Charters's knowledge, proposed against the Property or any portion thereof, including, without limitation, any street improvement or special district assessments.

(d)    Charters to its knowledge has never used, generated, processed, stored, released, discharged, transported, handled or disposed of any Hazardous Substance (as

herein defined), on, in or in connection with the Property, and without inquiry, and with no obligation for inquiry, Charters has no knowledge of any prior owner or operator of the Property or anyone else having used, generated, processed, stored, released, discharged, transported, handled or disposed of any Hazardous Substance on or in the Property. Without inquiry, and with no obligation for inquiry, Charters has no knowledge of any Hazardous Substance being present or existing on, in, under, near or about the Property. Exhibit 7.1 (d) hereto lists all reports or writings in the possession (actual or constructive) of Charters with respect to or which relate to the environmental condition of the Property and/or any surrounding properties.

(e)     Without inquiry, and with no obligation for inquiry, Charters has no knowledge of any part of the Property having been used as a cemetery/burial ground.

(f)     Charters has not received any notice that any default or breach exists under any covenant, condition, restriction, right of way, easement or other encumbrance affecting any part of the Property and there is no fact or condition which would constitute such default or breach.

(g)     Except with respect to the Bankruptcy Case and actions to foreclose various tax sale certificates, there is not now pending, nor has there been threatened, any action, suit, or proceeding against or affecting Charters or the Property before or by any federal or state court, commission, regulatory body, administrative agency or other governmental body, domestic or foreign, wherein an unfavorable ruling, decision or finding may reasonably be expected to have a material adverse affect on the business or prospects of or on the condition or operations of the Property (including the use and development of the Property for multi-family residential and commercial purposes), or would interfere with Buyer's or Charters's ability to consummate the transactions contemplated by this Contract or in any case or in the aggregate have a material adverse affect, financial or otherwise, on the business or affairs of Charters.

(h)     Charters is not a "foreign person," as defined under Internal Revenue Code Section 1445.

(i)     There are no management, service, supply, broker, maintenance or other contracts with respect to or affecting the Property and which would be binding upon Buyer or the Property after the Closing.

(j)     Without inquiry, and with no obligation for inquiry, to Charters's knowledge, there are no storage tanks in, on, under or about the Property.

(k)     The Property is not subject to any roll back tax or any similar tax related to the discontinuance of any use to which the Property has been put.

(l)     Charters has not received any notice or notices of violation (or claimed violations) of any law, ordinance, order, statute, rule or regulation or any complaints, order, citation or notice with regard to, affecting or relating to the Property.

(m)     No appeals are currently pending with respect to real estate taxes for the Property.

(n)     Charters has not entered into any presently effective contract regarding the sale, conveyance, transfer or disposition of the Property (except for the within Contract). Charters has not granted to anyone and no one possesses any option to purchase or right of first refusal to purchase the Property. Charters has not entered into any occupancy agreement, lease or the like with respect to, and no one has any right to use or occupy, the Property.

(o)     No agreements and/or other instruments exist that contain cross-default, cross-collateralization or other provisions that could adversely affect the Property or Buyer's entitlements pursuant to this Contract.

7.3.    Closing Certificate.  At the Closing, and as a condition thereof, without limitation of any other obligations of Seller contained in this Contract, Seller shall warrant and represent to Buyer as of the date of Closing in writing that all of the representations and warranties made by Seller in this Contract continue to be true and correct in all material respects as of the date of Closing as if they were made on the date of Closing, subject to any updates or changes to the representations set forth in Sections 7.1(b), (c), (f), (g), (k), (l) and (m) and 7.2(b), (c), (f), (g), (k), (l) and (m).

7.4.    Indemnity.  Seller shall indemnify and defend Buyer against and hold Buyer harmless from any and all actual (and not consequential) losses, costs, damages, liabilities and expenses (including without limitation reasonable counsel fees and counsel fees incurred to enforce this indemnity) arising out of a breach by Seller of its warranties, representations and/or covenants in this Contract, provided that such indemnification amount shall not exceed Twenty-Five Thousand Dollars ($25,000.00) in the aggregate.   All warranties, representations, indemnifications and covenants by Seller contained in this Contract or made in any writing pursuant to this Contract shall survive for a period of ninety (90) days from and after Closing. Any misrepresentation or default known to Buyer prior to Closing shall merge at Closing.

8.     Warranties and Representations by Buyer.

8.1.    Representations.  Buyer hereby warrants and represents to Seller, knowing and intending that Seller is relying hereon in entering into this Contract and consummating the transactions contemplated hereby, that:

(a)     Buyer is, and on the Closing Date shall be a corporation duly and validly organized and existing, in good standing and governed under the laws of the State of Maryland. Buyer has full power and authority to enter into and perform this Contract and all documents, instruments and contracts entered into or to be entered into by it pursuant to this Contract and to carry out the transactions contemplated hereby. This Contract is, and all documents that are to be executed by Buyer and delivered to Seller at the Closing will be duly authorized, executed and delivered by Buyer, and all consents required under Buyer's organizational documents, by law or otherwise have been or will be obtained. This Contract is,

and all documents that are to be executed by Buyer and delivered to Seller at the Closing, will be the legal, valid and binding obligations of Buyer, enforceable in accordance with their terms and will not violate any provisions of any agreement, judicial order or any matter to which Buyer is a party or to or by which Buyer is subject. Neither the execution or delivery of this Contract nor the consummation of the transactions contemplated by this Contract is subject to any requirement that Buyer obtain any consent, approval or authorization of, or make any declaration or filing with, any governmental authority or third party.

(b)     No consent, approval or waiver of any third party is required for the consummation by Buyer of the transactions contemplated by this Contract.

8.2.     <u>Closing Certificate</u>.  At the Closing, and as a condition thereof, without limitation of any other obligation of Buyer contained in this Contract, Buyer shall warrant and represent to Seller as of the date of Closing in writing that all representations made by Buyer in this Contract continue to be true and correct in all material respects as of the date of Closing as if they were made on the date of Closing.

8.3.     <u>Indemnity</u>.  Buyer shall indemnify, defend and hold Seller harmless from any and all losses, costs, damages, liabilities and expenses (including, without limitation, reasonable counsel fees and counsel fees incurred to enforce this indemnity) arising out of a breach by Buyer of its warranties, representations and covenants in this Contract, provided that such indemnification amount shall not exceed Twenty-Five Thousand Dollars ($25,000.00) in the aggregate.  All warranties, representations, indemnifications and covenants by Buyer contained herein or made in writing pursuant to this Contract shall survive for a period of ninety (90) days from and after the Closing.

9.     <u>Closing Adjustments; Roll Back Taxes</u>.

9.1.     <u>Items to be Adjusted</u>.

(a)     Real property taxes, and all other items customarily apportioned in connection with sales of similar properties similarly located shall be adjusted and apportioned at the Closing as of the close of business on the day immediately preceding the Closing.  The net amount thereof shall either be paid to Seller by Buyer or paid by Seller to Buyer.  With respect to real property taxes, if the Closing shall occur before the tax rate or assessment is fixed the apportionment of such real property taxes shall be upon the basis of the tax rate for the immediately preceding year applied to the latest assessed valuation, but such taxes shall be re-adjusted as soon as the applicable rate and assessment is fixed.

(b)     If any portion of the Property is now, has been or is on the Closing Date, assessed for a use, the change of which imposes a "roll back", then Seller shall be responsible for all "roll back taxes" which relate to any periods prior to the Closing, plus the year during which the Closing takes place.  At the Closing, Seller shall pay to Buyer (or allow Buyer a credit against the Purchase Price for) the amount of roll back taxes which will be assessable against the Property in connection with all periods referred to above, assuming that the change of use which imposes the roll back occurred on the Closing Date.  If, by the Closing Date, the exact

amount of roll back taxes has not been determined, then the amount credited against the Purchase Price shall be one hundred twenty five (125%) percent of the amount thereof estimated by the Municipality or if no such estimate is available, then one hundred twenty five (125%) percent of the amount thereof reasonably estimated by Buyer. Any underpayment or overpayment based upon such estimate shall be finalized and/or corrected and properly adjusted between the parties as soon as practicable. The foregoing shall be adjusted at the Closing for the year of Closing.

(c)     All confirmed assessments (for municipal improvements or otherwise) affecting the Property, and all unconfirmed assessments (but only if the work has been completed prior to the date hereof) regardless of when payable, in existence or effect as of the date of this Contract, shall be paid by Seller on or before the Closing Date (including those portions of any such assessment which may be paid in installments after the Closing). If any assessment affecting the Property first comes into being after the date of this Contract, and such assessment exceeds Five Hundred Thousand ($500,000) dollars, then Buyer shall have the right to terminate this Contract upon notice given to Seller within thirty (30) days after Buyer is notified in writing of the existence of such assessment, in which event Buyer shall be entitled to the return of the Deposit and all other obligations of the parties hereto shall cease and this Contract shall be terminated and the parties shall be without further recourse hereunder except for those obligations that are expressly stated herein to survive the termination of this Contract. If Buyer does not elect to terminate this Contract in accordance with the foregoing then, in addition to Seller's obligations contained in the first sentence of this subsection (c), Seller shall be responsible for paying all those assessments or portions thereof which are required to be paid prior to the Closing (which shall not include any portion of an assessment which Seller has elected to pay in installments, which installments are payable after the Closing). Notwithstanding the foregoing, Buyer shall bear any increased assessment based on its applying for and/or achieving Development Approvals.

9.2.    Corrections.   In the event that any of the apportionments contemplated above cannot be determined at the time of Closing by the Seller or Buyer or both or in the event that any such apportionments are incorrectly calculated at the time of Closing or thereafter, the parties shall, as soon as feasible thereafter, make such apportionment or correct such apportionment, as the case may be.

9.3.    Conveyance Taxes.   Seller shall pay any and all transfer and conveyance taxes, other than the Mansion Tax, if any. Buyer shall pay for the cost of recording the deed and title insurance. Buyer shall be responsible for its survey and the Mansion Tax, if any.

9.4.    Survival.   The obligations of the parties contained in this Section shall survive the Closing.

10.    Covenants by Seller

10.1.    Covenants. Between the date hereof and the Closing, Seller agrees that:

(a)     it will maintain the Property in the same condition as it is on the date of this Contract (reasonable wear and tear excepted);

(b)     it will not, by reason of any action or omission of Seller, cause or permit any representation or warranty to become not true, incorrect or inaccurate;

(c)     it shall perform any and all material obligations with respect to the Property under all easements, covenants, restrictions and contracts of record;

(d)     it will promptly give notice to Buyer of every threatened (following Seller's receipt of written notice thereof) or actual litigation whether or not covered by insurance against or relating to the Property (including, without limitation, the sale thereof to Buyer) or any portion thereof between the date of this Contract and the Closing;

(e)     it will not, without the prior written consent of Buyer, apply for, consent to or process any applications for zoning, re-zoning, variances, site plan approvals, subdivision approvals or development with respect to the Property or any portion thereof;

(f)     it will not, without the prior written consent of Buyer, grant any rights or other privileges in or with respect to the Property or any portion thereof or grant, or consent to or waive the right to object to, any easements, covenants or restrictions affecting all or any portion of the Property;

(g)     it will not enter into or modify any mortgages, operating agreements, ground leases, space leases or other agreements or encumbrances (including, without limitation, any cross default or cross collateralization agreements) with respect to or affecting the Property or any portion thereof such that the Property is burdened beyond 50 % of the net Purchase Price in the aggregate as to all such impositions;

(h)     it will promptly notify Buyer if it discovers, determines or is notified that any warranty or representation made by Seller hereunder is not (or is no longer) true;

(i)     it will make the Property available to Buyer, its agents, consultants and engineers for such inspections and tests or otherwise as Buyer deems appropriate;

(j)     it will fully and timely comply with all requirements of the New Jersey Division of Taxation, Bulk Sale Section (including without limitation) 1) expeditiously and properly filing a complete form TTD and 2) fund from closing proceeds any required escrow such that Seller provides Buyer a tax clearance certificate, the receipt of which shall be a prerequisite to Buyer's obligation to pay Seller the Purchase Price;

(k)     it will, to the extent necessary to avoid foreclosure of the Property, pay all taxes and other impositions, debt service and all other obligations regarding the Property;

(l)     it will not file any tax appeal with respect to the Property; and

(l)     it will maintain the Property in compliance with all applicable laws, statutes, ordinances, rules and regulations of any governmental authority having

jurisdiction over Seller and/or the Property and all recorded covenants and agreements relating to or affecting the Property.

11.   Additional Conditions to Buyer's Obligations.

11.1.   Conditions.   Without limitation of any other conditions to Buyer's obligation to close set forth in this Contract, the obligations of Buyer under this Contract are subject to the satisfaction at the time of Closing of each of the following conditions (any one of which may be waived in whole or in part by Buyer at or prior to Closing):

(a)   All of the representations by Seller in this Contract or any Exhibit annexed shall be true and correct in all material respects.   With respect to any representation made to the best of Seller's knowledge or to Seller's knowledge, the condition to Closing shall be both that such representation still be true to the best of Seller's knowledge or to Seller's knowledge and that the specific fact or condition that was the subject of the representation also be true;

(b)   Seller shall have performed, observed and complied with all covenants and obligations required by this Contract to be performed by Seller at or prior to Closing; and

(c)   Full possession of the Property, free of all claims of and possession by tenants and occupants is to be delivered at the Closing, the Property to be then (i) in the same condition as it now is reasonable wear and tear excepted; and (ii) in the same condition as described in any hazardous material site evaluation report obtained by Buyer, there having been no change in such condition from the date of such report.

12.   Closing Deliveries

12.1.   Seller's Obligations.   At the Closing, Seller shall, without limitation of Seller's obligations under this Contract, deliver the following documents satisfactory in form and substance to Buyer and Buyer's counsel, properly executed and acknowledged as required:

(a)   The Deed;

(b)   A certification of non-foreign status in the form required by law;

(c)   Evidence satisfactory to Buyer and to Buyer's title insurance company ("Title Company") that all necessary approvals, licenses and/or consents have been obtained and such other evidence satisfactory to Buyer or the Title Company of Seller's authority and the authority of the signatory on behalf of Seller to convey the Property pursuant to this Contract and due execution and delivery of this Contract and all documents required hereby;

(d)   Affidavits in the forms annexed as Exhibits 12.1 (d) (i) and (ii), respectively;

(e)   A certificate restating as of the Closing Date all of Seller's representations and warranties contained herein;

(f)       An original Closing Statement setting forth the Purchase Price, closing adjustments, prorations and the application thereof at the Closing ("Closing Statement");

(g)       Such transfer tax, gains or other similar forms required by law;

(h)       An original 1099-B certification;

(i)       Evidence of payment to the "Broker" (as hereinafter defined);

(j)       An assignment by Seller (without representation, warranty or recourse) to Buyer of any and all guarantees, warranties, licenses or other rights benefiting the Property which shall be in form reasonably satisfactory to Buyer's counsel;

(k)       Intentionally omitted; and

(l)       Sufficient bulk sales tax clearance certificate, bulks sales tax escrows and such other and further documents and items as may be reasonably required by the terms of this Contract or may be reasonably necessary for or incidental to consummating the transaction contemplated hereby.

12.2.   Buyer's Obligations.   At the Closing, Buyer shall without limitation of Buyer's obligations under this Contract, deliver the following documents satisfactory in form and substance to Seller and Seller's counsel, properly executed and acknowledged as required:

(a)       The Purchase Price;

(b)       The Closing Statement; and

(c)       A certificate restating as of the Closing Date all of Buyer's representations and warranties contained herein.

12.3   Bankruptcy Court Approval. Seller and Buyer acknowledge that this Agreement and the sale of the Property are subject to approval by the Bankruptcy Court as provided herein.

13.   Brokers.   Seller represents that except Jeff Fulton of SBWE, Inc. ("Broker") it has not given any agent or broker a listing to sell the Property, nor has any agent or broker introduced Seller to Buyer, nor has any other agent or broker been instrumental in effecting this transaction.   Seller acknowledges that Buyer has disclosed that it was contacted by Aaron Mittleman but has no contract with him. In the event any brokerage commission is due Aaron Mittleman, such commission shall be paid by Seller. Each party shall indemnify and hold the other party harmless in connection with any commission or other liability claimed or incurred by the other party as a result of the breach of any agreement or representation herein by the indemnifying party, including counsel fees and other litigation costs, provided that the party seeking indemnification shall have given prompt notice of any such claim or liability asserted

and shall have offered the other party the opportunity to defend against such claim or liability. Seller shall pay the commission payable to the Broker. The obligations under this Section shall survive the Closing (without limitation as to time) or the earlier termination of this Contract.

14.    Risk of Loss.

14.1.    Casualty.

(a)    The risk of loss, damage or destruction to the Property by fire or other casualty or the taking of all or part of the Property by condemnation or eminent domain or by an agreement in lieu thereof until the Closing is assumed by Seller. Seller shall deliver the Property to Buyer at Closing in the same condition as it exists on the date hereof (but without any obligations to repair any injury or damage thereto by fire, condemnation or other casualty).

(b)    If, prior to the Closing, the Property suffers injury or damage by fire or other casualty, and if such injury or damage interferes (interference to include increases in costs) in Buyer's judgment (to be exercised by Buyer in its sole and absolute discretion) with its ability to develop the Property for the Project, or in Buyer's judgment adversely affects the quality or value of the Property (i.e., loss of wooded areas) to be exercised by Buyer in its sole and absolute discretion, then Buyer shall have the option of (i) declaring this Contract null and void, in which event Buyer shall be entitled to the return of the Deposit and the obligations of the parties hereto shall cease (except for those which are expressly stated to survive the termination of this Contract) and this Contract shall be terminated and the parties shall be without further recourse hereunder; or (ii) accepting the Property in its then condition, without any reduction in the Purchase Price, together with an assignment of Seller's rights to any insurance proceeds payable to Seller with respect to said loss, damage or destruction, together with an assignment of Seller's rights and claims against others in connection with said loss, damage or destruction. If Seller has received payment of insurance proceeds or other payment to compensate it for such damage or injury, and if Buyer elects to close title to the Property, Seller shall retain same and credit the amount of said payment against the Purchase Price at the Closing.

14.2.    Taking.

In the event Seller receives any notice of a Taking or proposed Taking prior to Closing, Seller will immediately deliver a copy of such notice to Buyer. If all or any part of the Property has been or is the subject of a Taking prior to Closing, or if any proceeding for a Taking has been or is commenced prior to Closing, or if notice of the contemplated commencement thereof has been or is given to Seller and/or Buyer prior to Closing, Buyer shall have the following options, exercisable by notice to Seller within thirty (30) days after receipt by Buyer of written notice of the Taking or the proposed Taking:   (i) terminate this Contract, in which event Buyer shall be entitled to the return of the Deposit and thereafter neither party shall have any further obligation to the other except for those which are expressly stated herein to survive the termination of this Contract; or (ii) close title to the Property in accordance with the terms hereof, in which event Buyer shall receive a credit against the Purchase Price equal to the total of all awards or damages received prior to Closing by Seller and any party claiming under or through Seller, and at Closing Seller and any party claiming under or through Seller shall

assign to Buyer without representation all of their rights to any additional condemnation proceeds, awards or damages. Seller shall not enter into any settlement of condemnation claims without Buyer's written consent, not to be unreasonably withheld or delayed.

15.    Assignment.

Buyer shall have the right, without Seller's consent, to assign this Contract and its rights hereunder to any entity which shall control, be controlled by or under common control with Buyer or any director or officer of Buyer. After Buyer obtains the Development Approvals, Buyer shall have the right to assign this Contract to any other party with Seller's consent, which consent shall not be unreasonably withheld or delayed, and any assignee of Buyer shall be entitled to all of the rights and powers of Buyer hereunder. If Buyer assigns this Contract, the assignee shall assume all responsibilities for any obligations of Buyer hereunder, provided, however, Buyer shall not be relieved of any duties, obligations and liabilities hereunder, including without limitation any that survive Closing. The merger of Buyer to or with another shall not be deemed an assignment and the surviving or resultant entity shall become the Buyer hereunder.

16.    Notices.

Any notice or communication which may be or is required to be given pursuant to the terms of this Contract shall be in writing and shall be sent to the respective party at the addresses set forth below, postage prepaid, by certified mail, return receipt requested, by a nationally recognized overnight courier service that provides tracing and proof of receipt of items mailed or by facsimile provided that if notices are given by facsimile a copy thereof must be sent on the same day by nationally recognized overnight courier service that provides tracing and proof of receipt of items mailed for next business day delivery. Notices shall be effective upon receipt. Either party may change the address to which notices to it shall be sent by a notice sent in accordance with the requirements of this Section.

To Buyer:

AvalonBay Communities, Inc.
517 Route One South
Fifth Floor - Suite 5500
Iselin, New Jersey 08830
Attention:    Ronald S. Ladell
              Senior Vice President of Development

With copies to:

AvalonBay Communities, Inc.
51 Sleeper St., Suite 750
Boston, MA 02210
Attention:    William McLaughlin, Executive Vice President

AvalonBay Communities, Inc.
Ballston Tower

671 N. Glebe Road, Suite 800
Arlington, Virginia 22203
Attention: General Counsel

and

Carl Kemph, Esq.
6 Hampshire Court
Springfield, New Jersey 07081

To Seller:

Paradigm East Hanover, LLC
77 Charters, Inc. c/o Paradigm
380 Lexington Avenue, Suite 2020
New York, New York 10168
Attention:    David Kushner

77 Charters Inc.
c/o SAT Investment FLP
300 Southpoint Drive, Unit LPH-2
Miami Beach, FL 33139
Attention: Sam Tawfik

With a copy to:

Tannenbaum Helpern Syracuse & Hirschtritt LLP
900 Third Avenue
New York, New York 10022
Attention: Robert E. Helpern, Esq.

Norris, McLaughlin & Marcus
721 Route 202-206, Suite 200
Bridgewater, NJ 08807-5933
Attention: Morris Bauer, Esq.

Ruta Soulios & Stratis LLP
1500 Broadway – 21st Floor
New York, New York 10036
Attention: Joseph A. Ruta, Esq.

17.    Escrow Agent.

17.1.    Delivery of Deposit.

(a)    Escrow Agent shall deliver the Deposit (for purposes of this Section, the "Escrow") to Seller and Buyer promptly after receiving a joint written notice from Seller and Buyer directing the disbursement of the same, such disbursement to be made in accordance with such direction.  If Escrow Agent receives written notice from Buyer or Seller that the party giving such notice is entitled to the Escrow, which notice shall describe with

reasonable specificity the reasons for such entitlement, then Escrow Agent shall (i) promptly give notice to the other party of Escrow Agent's receipt of such notice and enclosing a copy of such notice and (ii) subject to the provisions of the following section which shall apply if a conflict arises, on the fourteenth (14th) day after the giving of the notice referred to in clause (i) above, deliver the Escrow to the party claiming the right to receive it.

(b)    Escrow Agent shall not be permitted or entitled to draw upon the Escrow deposited with it by Buyer unless (i) it receives a written direction from Seller to do so, which written direction shall state that Seller is entitled to receive the Deposit, (ii) Escrow Agent complies with the notice provisions of Section 17.1(a) hereof, and (iii) Escrow Agent does not receive a notice from Buyer within fourteen (14) days after the giving by Escrow Agent to Buyer of the notice required by Section 17.1(a) hereof, objecting to the Escrow Agent's drawing upon the Escrow.

17.2.    _Alternative Actions_.  In the event that Escrow Agent shall be uncertain as to its duties or actions hereunder or shall receive instructions or a notice from Buyer or Seller which are in conflict with instructions or a notice from the other party or which, in the reasonable opinion of Escrow Agent, are in conflict with any of the provisions of this Contract, it shall be entitled to take any of the following courses of action:

(a)    Hold the Escrow as provided in this Contract and decline to take any further action until Escrow Agent receives a joint written direction from Buyer and Seller or any order of a court of competent jurisdiction directing the disbursement of the Escrow, in which case Escrow Agent shall then disburse the Escrow in accordance with such direction;

(b)    In the event of litigation between Buyer and Seller, Escrow Agent may deliver the Escrow to the clerk of any court in which such litigation is pending; or

(c)    Escrow Agent may deliver the Escrow to a court of competent jurisdiction and therein commence an action for interpleader, the cost thereof to Escrow Agent to be borne by whichever of Buyer or Seller does not prevail in the litigation.

17.3.    _Liability_.  Escrow Agent shall not be liable for any action taken or omitted in good faith and believed by it to be authorized or within the rights or powers conferred upon it by this Contract and it may rely, and shall be protected in acting or refraining from acting in reliance upon an opinion of counsel and upon any directions, instructions, notice, certificate, instrument, request, paper or other documents believed by it to be genuine and to have been made, sent, signed or presented by the proper party or parties.  In no event shall Escrow Agent's liability hereunder exceed the aggregate amount of the Deposit.  Escrow Agent shall be under no obligation to take any legal action in connection with the Deposit or this Contract or to appear in, prosecute or defend any action or legal proceeding which would or might, in its sole opinion, involve it in cost, expense, loss or liability unless, in advance, and as often as reasonably required by it, Escrow Agent shall be furnished with such security and indemnity as it finds reasonably satisfactory against all such cost, expense, loss or liability.  Notwithstanding any other provision of this Contract, Buyer and Seller jointly indemnify and hold harmless Escrow Agent against any loss, liability or expense incurred without bad faith on its part and arising out

of or in connection with its services under the terms of this Contract, including the cost and expense of defending itself against any claim of liability.

17.4.    Modification.    Escrow Agent shall not be bound by any modification of this Contract unless the same is in writing and signed by Buyer, Seller and Escrow Agent.  From time to time on or after the date hereof, Buyer and Seller shall deliver or cause to be delivered to Escrow Agent such further documents and instruments that fall due, or cause to be done such further acts as Escrow Agent may reasonably request (it being understood that the Escrow Agent shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Contract, to evidence compliance with this Contract or to assure itself that it is protected in acting hereunder.

17.5.    Expenses.    Escrow Agent shall serve hereunder without fee for its services as escrow agent, but shall be entitled to reimbursement for expenses incurred by it, which expenses shall be paid and borne equally by Buyer and Seller, unless such expenses are associated with litigation between Buyer and Seller, in which event they shall be borne by the party that does not prevail in the litigation.  Escrow Agent shall not seek reimbursement for the services of its employees, but only for its actual and reasonably incurred out-of pocket expenses.

18.    Environmental.

18.1.    Intentionally omitted.

19.    Miscellaneous.

19.1.    Governing Law; Assigns.    This Contract shall be governed by and construed in accordance with the laws of the State of New Jersey and shall be binding upon and inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties.  If Seller shall consist of more than one person or entity, the liability hereunder of the persons and/or entities comprising Seller shall be joint and several.

19.2.    Amendment.    This Contract represents the entire understanding of the parties hereto with respect to the subject matter hereof and may only be amended by a writing executed by the parties hereto.  All prior negotiations and discussions by the parties hereto with respect to the subject matter hereof are merged herein and superseded hereby.

19.3.    Memorandum of Contract.    Concurrently with the execution hereof, a memorandum of this Contract in the form of Exhibit 19.3 annexed shall be filed for recording in the appropriate land records office of the jurisdiction in which the Property is located. A discharge of such memorandum ("Memorandum Discharge") shall also be executed in the form attached as Exhibit 19.3A to be held by Escrow Agent. Buyer shall execute and deliver to Escrow Agent an updated copy of the Memorandum Discharge at such later date as Seller shall request. If Seller so requests, Buyer shall not be entitled to the return of the Letter of Credit and the proceeds thereof until Buyer delivers the Memorandum Discharge and any documents required to record same. In addition, if Buyer fails to execute and deliver such additional documents at such later date, Seller shall have the right to commence an action to compel

Buyer's compliance with this Section. Buyer agrees to reimburse Seller's reasonable attorney's fees incurred in bringing a specific performance action regarding a default under this Section by Buyer.

19.4.  <u>Possession</u>.  At the Closing, Seller shall deliver possession of the Property to Buyer and Buyer shall be entitled to all rents, issues and profits therefrom.

19.5.  <u>Cooperation</u>.  After the Closing Seller and Buyer shall cooperate with one another at reasonable times and on reasonable conditions (without additional cost or liability to Seller as to Buyer requests) and shall execute and deliver such instruments and documents as may be necessary in order to fully carry out the intent and purposes of the transactions contemplated hereby.  Except for such instruments and documents as the parties were originally obligated to deliver by the terms of this Contract, such cooperation shall be without additional cost or liability to either party.

19.6.  <u>Counterparts</u>.  This Contract may be executed in any number of identical counterparts and may be in the form of a pdf.  If so executed, each such counterpart shall constitute this Contract.  In proving this Contract, it shall not be necessary to produce or account for more than one such counterpart.

19.7.  <u>Captions</u>.  The captions in this Contract are inserted only for the purpose of convenience of reference and in no way define, limit or describe the scope or intent of this Contract or any part thereof.

19.8.  <u>Waivers</u>.  Buyer shall have the right to waive any condition to its obligation to close title to the Property.  No waiver shall be binding upon Buyer unless in writing and signed by Buyer's duly authorized representative.

19.9.  <u>Construction</u>.  Each provision of this Contract has been mutually negotiated, prepared and drafted, each party has been represented by legal counsel, and in connection with the construction of any provision hereof or deletions herefrom no consideration shall be given to the issue of which party actually prepared, drafted, requested or negotiated any provision or deletion.

19.10  <u>Publicity and Confidentiality</u>.  Buyer and Seller each agree that prior to the Closing, the terms of the transaction contemplated by this Contract, the identity of Buyer and all information made available by Buyer to Seller or in any way relating to the Buyer's interest in that transaction, shall be maintained in strict confidence and prior to the Closing, no disclosure of such information be made by Buyer or Seller, whether or not the transaction contemplated by this Contract shall close, except to such attorneys, accountants, investment advisors, lenders and others as are reasonably required to evaluate and consummate such transaction. Buyer and Seller for themselves each further agree that nothing in this Section shall prevent Buyer or Seller from disclosing or accessing any information otherwise deemed confidential under this Section (a) in connection with that party's enforcement or its rights hereunder; (b) pursuant to any legal requirement, any statutory or regulatory reporting requirement or any accounting or auditing disclosure requirement; (c) in connection with performance by either party of its obligations under this Contract (including, but not limited to, delivery and recordation of instruments,

notices or other documents required hereunder); or (d) to potential investors, participants or assignees in or of the transaction contemplated in this Contract or such party's rights therein. Seller acknowledges that (x) Buyer's common stock is publicly traded, (y) information concerning the proposed transaction may constitute material, not-public information concerning Buyer and its securities and (z) any disclosure of information concerning the proposed transaction and/or any trading in Buyer's securities by persons having knowledge of the proposed transaction prior to public disclosure of such information by Buyer may violate federal or state securities laws and result in civil and criminal liability.

19.11   Cure of Unperformed Obligations.   In the event that Seller fails to properly and timely perform any obligations in accordance with this Contract ("Obligations"), Buyer shall have the right to provide Seller with ten (10) days' written notice specifying the manner in which Seller has failed to perform the Obligations. Upon receipt of each such notice, Seller shall within such ten (10) day period properly complete all required Obligations. In the case of an Obligation which by its nature cannot be completed within such ten (10) day period, Seller shall commence to perform all required Obligations and thereafter shall diligently prosecute the Obligations to completion, subject to limitation pursuant to section 7.3, above. In the event that Seller fails to do so, then Buyer may perform the Obligations set forth in such notice all in the name, for their account and at the expense of Seller. Buyer shall have the absolute right of entry upon the Property to perform such Obligations and shall in no event be held to be a trespasser. Buyer, by reason if its doing so, shall not be liable or responsible to Seller or any other person or entity for any losses or damages thereby sustained by Seller, its officers, agents, employees and invitees or anyone claiming by or under Seller, its officers agents, employees and invitees unless such loss or damage arose from Buyer's gross negligence or willful misconduct in performing any such Obligations. The cost to perform such Obligations shall be paid by Seller to Buyer within twenty (20) days after the date of receiving a statement therefore, which statement shall specify the details of the Obligations performed and the amount or cost thereof. In the event that Seller shall fail to pay any such amount when due, Buyer shall have all of the rights and remedies available at law or in equity.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have executed this Contract as of the date first above written.

Buyer: AvalonBay Communities, Inc.

By:_____

Ronald S. Ladell, Senior Vice President

Seller:  Paradigm East Hanover, LLC

By:_____
David Kushner, Managing Member

By:_____

Wayne Sturman, Managing Member

77 Charters, Inc.

By:_____

Sam Tawfik, President and CEO

Escrow Agent:

First American Title Insurance Company

By:_____

IN WITNESS WHEREOF, the parties have executed this Contract as of the date first above written.

Buyer: AvalonBay Communities, Inc.

By: _____

      Ronald S. Ladell, Senior Vice President

Seller: Paradigm East Hanover, LLC

By: _____
David Kushner, Managing Member

By: _____

      Wayne Sturman, Managing Member

77 Charters, Inc.


By: _____

      Sam Tawfik, President and CEO

Escrow Agent:

First American Title Insurance Company

By: _____

IN WITNESS WHEREOF, the parties have executed this Contract as of the date first above written.

Buyer: AvalonBay Communities, Inc.

By: _____

Ronald S. Ladell, Senior Vice President

Seller: Paradigm East Hanover, LLC

By: _____
David Kushner, Managing Member

By: _____

Wayne Sturman, Managing Member

77 Charters, Inc.

By: _____

Sam Tawfik, President and CEO

Escrow Agent:

First American Title Insurance Company

By: _____

IN WITNESS WHEREOF, the parties have executed this Contract as of the date first above written.

Buyer: AvalonBay Communities, Inc.

By: _____

Ronald S. Ladell, Senior Vice President

Seller: Paradigm East Hanover, LLC

By: _____
David Kushner, Managing Member

By: _____
        Wayne Sturman, Managing Member

77 Charters, Inc.

By: _____
        Sam Tawfik, President and CEO

Escrow Agent:

First American Title Insurance Company

By: _____
Eric Liang
Underwriting Counsel

EXHIBIT 1

Description of Property

Block 99, Lot 4.02, East Hanover, New Jersey

BEGINNING at a point in the southwesterly line of Mount Pleasant Avenue (66 feet wide) in the dividing line between land formerly of Aaron Courter and land now or formerly owned by R. Bruce Davy; thence South 56 degrees 44 minutes 47 seconds West 237.19 feet to a point; thence South 56 degrees 50 minutes 34 seconds West, 1015.74 feet to a point; thence South 50 degrees 15 minutes 26 seconds West, 396.59 feet to the point or place of beginning; thence

(1) South 50 degrees 15 minutes 26 seconds West, 753.66 feet to a point; thence

(2) North 50 degrees 29 minutes 55 seconds West 469.04 feet to a point; thence

(3) North 39 degrees 57 minutes 01 seconds East, 1077.00 feet partially along the southeasterly sideline of Farinella Drive (50 feet wide) to a point; thence

(4) South 50 degrees 02 minutes 59 seconds East, 21.62 feet to a point; thence

(5) South 13 degrees 47 minutes 57 seconds East, 54.68 feet to a point; thence

(6) South 04 degrees 28 minutes 01 seconds East, 67.62 feet to a point; thence

(7) South 24 degrees 59 minutes 35 seconds East, 163.94 feet to a point; thence

(8) South 15 degrees 17 minutes 20 seconds East, 261.91 feet to a point; thence

(9) South 35 degrees 44 minutes 19 seconds East, 131.23 feet to the point or place of beginning.

The description for both Lots 4 and 4.02 in Block 99 are in accordance with a survey prepared by William B. Page, P.E. of Page Consultants, Inc., dated 02/06/2008, Project No. 00116.

EXHIBIT 2.2
Letter of Credit

**Bank of America**

BANK OF AMERICA - CONFIDENTIAL                    PAGE: 1

DATE: ▓▓▓▓▓▓▓▓▓▓▓

IRREVOCABLE STANDBY LETTER OF CREDIT NUMBER: ▓▓▓▓▓▓

                                    ISSUING BANK
                                    BANK OF AMERICA, N.A.
                                    ONE FLEET WAY
                                    PA6-580-02-30
                                    SCRANTON, PA 18507-1999

    BENEFICIARY                     APPLICANT
FIRST AMERICAN TITLE INSURANCE      AVALONBAY COMMUNITIES, INC.
COMPANY, 633 THIRD AVENUE           1499 POST ROAD 2ND FL
NEW YORK, NY 10017                  FAIRFIELD, CT 06484
ATTN: PHIL SALOMON

    AMOUNT
NOT EXCEEDING USD ▓▓▓▓
NOT EXCEEDING ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    EXPIRATION
▓▓▓▓▓▓▓▓▓▓ AT OUR COUNTERS


GENTLEMEN/LADIES:

WE HEREBY OPEN OUR IRREVOCABLE STANDBY LETTER OF CREDIT NUMBER
▓▓▓▓▓▓ IN YOUR FAVOR.

THIS CREDIT IS AVAILABLE WITH BANK OF AMERICA, N.A. BY PAYMENT OF
BENEFICIARY'S DRAFT AT SIGHT DRAWN ON BANK OF AMERICA, N.A.
ACCOMPANIED BY:

1. THE ORIGINAL LETTER OF CREDIT AND ALL AMENDMENTS, IF ANY.

2. A DATED STATEMENT SIGNED BY AN AUTHORIZED OFFICER OF THE
BENEFICIARY ON BENEFICIARY'S LETTERHEAD READING AS FOLLOWS:
QUOTE
THE UNDERSIGNED IS ENTITLED TO DRAW UPON THIS LETTER OF CREDIT IN
ACCORDANCE WITH THE TERM OF THAT PURCHASE AND SALE CONTRACT BETWEEN
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, SELLER, AND AVALONBAY
COMMUNITIES, INC., BUYER, DATED AS OF ▓▓▓▓▓▓▓▓▓. THE
UNDERSIGNED HAS RECEIVED A NOTICE OF DEFAULT FROM THE CONTRACT
SELLING PARTY AND AS A RESULT THE UNDERSIGNED (ESCROW AGENT) IS
ENTITLED TO DRAW UPON THIS LETTER OF CREDIT PURSUANT TO SAID PURCHASE
AND SALE CONTRACT (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).
UNQUOTE

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT IS DEEMED TO BE
AUTOMATICALLY EXTENDED WITHOUT AMENDMENT FOR PERIOD(S) OF ONE YEAR
EACH FROM THE CURRENT EXPIRY DATE HEREOF, OR ANY FUTURE EXPIRATION


                        ORIGINAL

05-17-1486H  05-2011

**Bank of America** 

BANK OF AMERICA - CONFIDENTIAL                        PAGE: 2

THIS IS AN INTEGRAL PART OF LETTER OF CREDIT NUMBER: ━━━

DATE, UNLESS AT LEAST THIRTY (30) DAYS PRIOR TO ANY EXPIRATION DATE,
WE NOTIFY YOU IN WRITING BY REGISTERED MAIL OR OVERNIGHT COURIER AT
THE ABOVE LISTED ADDRESS THAT WE ELECT NOT TO CONSIDER THIS LETTER OF
CREDIT EXTENDED FOR ANY SUCH ADDITIONAL PERIOD.

ANY SUCH NOTICE SHALL BE EFFECTIVE WHEN SENT BY US AND UPON SUCH
NOTICE TO YOU, YOU MAY DRAW AT ANY TIME PRIOR TO THE THEN CURRENT
EXPIRATION DATE, UP TO THE FULL AMOUNT THEN AVAILABLE HEREUNDER,
AGAINST YOUR DRAFT DRAWN ON US AT SIGHT AND THE ORIGINAL OF THIS
LETTER OF CREDIT AND ALL AMENDMENTS THERETO, ACCOMPANIED BY YOUR
STATEMENT, SIGNED BY AN AUTHORIZED OFFICER, ON YOUR LETTERHEAD
STATING THAT YOU ARE IN RECEIPT OF BANK OF AMERICA, N.A.'S NOTICE OF
NON-EXTENSION UNDER LETTER OF CREDIT NO. ━━━ AND THE APPLICANT'S
OBLIGATION TO YOU REMAINS.

PARTIAL DRAWINGS ARE NOT PERMITTED.

THIS LETTER OF CREDIT IS NON-TRANSFERABLE.

REFERENCE TO ANY DOCUMENT, INSTRUMENTS OR AGREEMENTS OTHER THAN THE
CREDIT FACILITY IS FOR IDENTIFICATION PURPOSES ONLY AND SUCH
DOCUMENT, INSTRUMENT OR AGREEMENT WILL NOT BE INCORPORATED INTO THE
TERMS OF THE LETTER OF CREDIT.

DRAFT(S) MUST STATE "DRAWN UNDER BANK OF AMERICA, N.A. STANDBY LETTER
OF CREDIT NUMBER 68100384 DATED NOVEMBER 25, 2013."

COMMUNICATIONS WITH RESPECT TO THIS LETTER OF CREDIT SHALL BE IN
WRITING AND SHALL BE ADDRESSED TO US AT, ONE FLEET WAY, SCRANTON, PA,
18507, ATTN: TRADE OPERATIONS - STANDBY UNIT, PHONE: 1-800-370-7519,
OPTION NUMBER 1, FACISMILE: 1-800-755-8473, SPECIFICALLY REFERRING TO
THE NUMBER OF THIS LETTER OF CREDIT.

EXCEPT AS OTHERWISE EXPRESSLY STATED HEREIN, THE CREDIT IS ISSUED
SUBJECT TO THE INTERNATIONAL STANDBY PRACTICES (ISP98), INTERNATIONAL
CHAMBER OF COMMERCE PUBLICATION NO. 590.

IF YOU REQUIRE ANY ASSISTANCE OR HAVE ANY QUESTIONS REGARDING THIS
TRANSACTION, PLEASE CALL 800-370-7519 OPT 1 .

_____
AUTHORIZED SIGNATURE
                THIS DOCUMENT CONSISTS OF 2 PAGE(S).

                        ORIGINAL

05-17-14868  05-2011

EXHIBIT 6.1

Title Policy

[separately provided]

EXHIBIT 7.1 (d)

Environmental Reports

[separately provided]

EXHIBITS 12.1 (d) (i) and (ii)

Title Affidavits

# AFFIDAVIT OF TITLE
## Sale of Property by a Limited Liability Company

STATE OF _____  } ss.
COUNTY OF _____

_____, _____ and _____, say
under oath:

*1.*    ***Representations.*** If only one person signs this affidavit, the words "we," "us" and "our" shall mean "I,"
"me" and "my." The statements in this affidavit are true to the best of our knowledge, information and belief.

*2.*    ***Property.*** The subject of this affidavit is real property (hereinafter "the Property") located at:

**Block 99, Lot 4.02, Township of East Hanover, Morris County, State of New Jersey**

*3.*    ***LLC Authority.*** The Property is to be sold by the LLC to                                                             ".,
hereinafter the "Buyer."

        This action and the making of this affidavit of title have been duly authorized by the LLC. *True copies of*
*the Certificate of Formation and Operating Agreement for the LLC, both of which have not been amended and are*
*in full force and effect, are attached and made a part of this affidavit.* The LLC is legally authorized to transact
business in New Jersey. Other than with respect to that certain action bearing Case No. 14-25017-DHS pending
before the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Action"), it is not restrained
from doing business, nor has any legal action been taken for that purpose. It has never changed its name or used any
other name.

*4.*    ***Ownership and Possession.*** The LLC and 77 Charters, Inc. are the only owners of the Property. The LLC
has owned the Property since    **October 22, 2009**    . Since then, no one has questioned its right to ownership or
possession.

    [x]The LLC is in possession of the Property. There are no tenants or other occupants.

    [ ]    There are _____ tenants or other occupants of the Property.

        Except for its agreements with the Buyer, the LLC has not signed any contracts to sell the Property which
are still in effect. It has not given anyone else any rights concerning the purchase or lease of the Property.

*5.*    ***Improvements.*** No additions, alterations or improvements are now being made or have been made to the
Property since _____. Necessary permits and certificates of occupancy have always been
obtained. All charges for municipal improvements such as curbs, sidewalks, sewers or similar improvements
benefiting the Property have been paid in full. No building, addition, extension or alteration on the Property has been
made or worked on within the past four months. The LLC is not aware that anyone has filed or intends to file a
mechanic's lien or building contract relating to the Property. No one has notified the LLC that money is due or
owing for construction, alteration or repair work on the Property.

*6.*    ***Liens or Encumbrances.*** The LLC has not allowed any interests (legal rights) to be created that affect its
ownership or use of the Property. No other persons have legal rights in the Property, except the rights of utility
companies to use the Property along the road or for the purpose of serving the Property. Other than matters which
will be disposed of at closing, the LLC is not a party to any pending lawsuit, judgment or other legal obligation that
may be enforced against the Property. It does not owe any disability, unemployment, social security, municipal or

alcoholic beverage tax payments. No one has any security interest in any personal property or fixtures included in this transaction. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against the LLC, but against others with the same or similar name.

7.    *Exceptions and Additions.* The following is a complete list of exceptions and additions to the above statements. This includes all liens or mortgages that are not being paid off as a result of this sale.

We have been advised that recognizances and/or abstracts of recognizances of bail are not being indexed among the records of the **Morris County** Clerk/Register's office and that title insurer(s) and/or mortgagee(s) will rely on the truthfulness of this statement. We hereby certify that there are no recognizances filed against the LLC or any member thereof as either principal or surety on the Property that is the subject of this transaction. There are no unpaid fines or surcharges levied against the LLC by the Division of Motor Vehicles.

8.    *Reliance.* This affidavit may be relied upon by Buyer's title insurers.


Signed and sworn to before me on                                    _____
.


_____              _____
Notary Public

# AFFIDAVIT OF TITLE
## Sale of Property by a Corporation

STATE OF _____
                                    } ss.
COUNTY OF _____

_____, _____ and _____, say
under oath:

*1.*      *Representations.* If only one person signs this affidavit, the words "we," "us" and "our" shall mean "I,"
"me" and "my." The statements in this affidavit are true to the best of our knowledge, information and belief.

*2.*      *Property.* The subject of this affidavit is real property (hereinafter "the Property") located at:

**Block 99, Lot 4.02, Township of East Hanover, Morris County, State of New Jersey**

*3.*      *Officers.* Each of us is an officer of **77 CHARTERS, INC.**, a corporation of the State of New Jersey and
hereinafter referred to as the "Corporation" or simply "it" or "its." Each of us is a citizen of the United States, at least
18 years old and fully familiar with the business and bylaws of the Corporation.

The Corporation's main office location is

The President of the Corporation is                                  , who resides at

The Secretary of the Corporation is                                 , who resides at

*4.*      *Corporate Authority.* The Property is to be sold by the Corporation to                                      .,
hereinafter the "Buyer."

This action and the making of this affidavit of title have been duly authorized by a proper resolution of the
Board of Directors of the Corporation. *A copy of that resolution, bearing the seal of the Corporation, is attached
and made a part of this affidavit.* The Corporation is legally authorized to transact business in New Jersey. It has
paid all state franchise taxes presently due. Its charter, franchise and corporate powers have never been suspended or
revoked. It is not restrained from doing business, nor has any legal action been taken for that purpose. It has never
changed its name or used any other name.

*5.*      *Approval by Shareholders.* (check only one)

[  ]   Shareholder approval is not required.

[  ]   This transaction affects all or substantially all of the assets of the Corporation and is not made in the regular course
       of the business of the Corporation. A copy of the authorization and approval of the shareholders is attached.

*6.*      *Ownership and Possession.* The Corporation and Paradigm East Hanover LLC are the only owners of the
Property. The Corporation has owned the Property since   **October 22, 2009**  . Since then, no one has questioned
its right to ownership or possession.

[  ]   The Corporation is in possession of the Property. There are no tenants or other occupants.

[  ]   There are _____ tenants or other occupants of the Property.

Except for its agreements with the Buyer, the Corporation has not signed any contracts to sell the Property
which are still in effect. It has not given anyone else any rights concerning the purchase or lease of the Property.

*7.*      *Improvements.* No additions, alterations or improvements are now being made or have been made to the
Property since _____. Necessary permits and certificates of occupancy have always been
obtained. All charges for municipal improvements such as curbs, sidewalks, sewers or similar improvements
benefiting the Property have been paid in full. No building, addition, extension or alteration on the Property has been

made or worked on within the past four months. The Corporation is not aware that anyone has filed or intends to file a mechanic's lien or building contract relating to the Property. No one has notified the Corporation that money is due or owing for construction, alteration or repair work on the Property.

**8.**    ***Liens or Encumbrances.*** The Corporation has not allowed any interests (legal rights) to be created that affect its ownership or use of the Property. No other persons have legal rights in the Property, except the rights of utility companies to use the Property along the road or for the purpose of serving the Property. The Corporation is not a party to any pending lawsuit, judgment or other legal obligation that may be enforced against the Property. It does not owe any disability, unemployment, social security, municipal or alcoholic beverage tax payments. No bankruptcy or insolvency proceedings have been started by or against the Corporation, nor has it ever been declared bankrupt. No one has any security interest in any personal property or fixtures included in this transaction. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against the Corporation, but against others with the same or similar name.

**9.**    ***Exceptions and Additions.*** The following is a complete list of exceptions and additions to the above statements. This includes all liens or mortgages that are not being paid off as a result of this sale.

We have been advised that recognizances and/or abstracts of recognizances of bail are not being indexed among the records of the **Morris County** Clerk/Register's office and that title insurer(s) and/or mortgagee(s) will rely on the truthfulness of this statement. We hereby certify that there are no recognizances filed against the Corporation as either principal or surety on the Property that is the subject of this transaction. There are no unpaid fines or surcharges levied against the Corporation by the Division of Motor Vehicles.

**10.**    ***Reliance.*** This affidavit may be relied upon by Buyer's title insurers.


Signed and sworn to before me on                    _____


_____           _____
Notary Public

EXHIBIT 19.3

MEMORANDUM OF CONTRACT

This is a Memorandum of Contract being made as of October __, 2014 between Paradigm East Hanover, LLC, a New Jersey limited liability company, having an address at c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168 and 77 Charters, Inc., a Delaware corporation, having an address at c/o SAT Investment FLP, 300 Southpoint Drive, Unit LPH-2, Miami Beach, Florida 33139 (collectively, "Seller") and AvalonBay Communities, Inc., a Maryland corporation having an office at 517 Route 1 South, Suite 5500, Iselin, New Jersey 08830 ("Buyer").

1.    Contract - Seller and Buyer entered into a Purchase and Sale Contract ("Contract") as of the date hereof for the purchase of real property lying, situate and being in the Municipality of East Hanover ("Municipality"), County of Morris and State of New Jersey, known as Block 99, Lot 4.02, on the Tax Map of the Municipality and more particularly described on Schedule "A" annexed.

2.    Settlement - Pursuant to the Contract, title to the Property is contemplated to close ("Settlement") within the earlier of (i) forty-five (45) days after the approvals contingency provided in the Contract is satisfied or waived in writing by Buyer, or (ii) two (2) years from the date of expiration of the Due Diligence Period in the Contract, in either case subject to such extensions as may be provided in the Contract and/or as the parties may determine.

3.    Public Notice; Further Information - This memorandum gives public notice of the impending purchase under the Contract. Parties seeking further information as to status or otherwise are directed to communicate with: Carleton R. Kemph, Esq., 6 Hampshire Court, Springfield, New Jersey 07081.

IN WITNESS WHEREOF, each party has caused this Memorandum to be duly executed on its respective behalf as of the day and year first above written.

WITNESS:                                  Seller: Paradigm East Hanover, LLC

_____                   By: _____
                                          David Kushner, Managing Member

_____                   By: _____
                                          Wayne Sturman, Managing Member

                                          77 Charters, Inc

_____                   By: _____
                                              Sam Tawfik, President and CEO

EXHIBIT 19.3

MEMORANDUM OF CONTRACT

This is a Memorandum of Contract being made as of October __, 2014 between Paradigm East Hanover, LLC, a New Jersey limited liability company, having an address at c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168 and 77 Charters, Inc., a Delaware corporation, having an address at c/o SAT Investment FLP, 300 Southpoint Drive, Unit LPH-2, Miami Beach, Florida 33139 (collectively, "Seller") and AvalonBay Communities, Inc., a Maryland corporation having an office at 517 Route 1 South, Suite 5500, Iselin, New Jersey 08830 ("Buyer").

1.      Contract - Seller and Buyer entered into a Purchase and Sale Contract ("Contract") as of the date hereof for the purchase of real property lying, situate and being in the Municipality of East Hanover ("Municipality"), County of Morris and State of New Jersey, known as Block 99, Lot 4.02, on the Tax Map of the Municipality and more particularly described on Schedule "A" annexed.

2.      Settlement - Pursuant to the Contract, title to the Property is contemplated to close ("Settlement") within the earlier of (i) forty-five (45) days after the approvals contingency provided in the Contract is satisfied or waived in writing by Buyer, or (ii) two (2) years from the date of expiration of the Due Diligence Period in the Contract, in either case subject to such extensions as may be provided in the Contract and/or as the parties may determine.

3.      Public Notice; Further Information - This memorandum gives public notice of the impending purchase under the Contract. Parties seeking further information as to status or otherwise are directed to communicate with: Carleton R. Kemph, Esq., 6 Hampshire Court, Springfield, New Jersey 07081.

        IN WITNESS WHEREOF, each party has caused this Memorandum to be duly executed on its respective behalf as of the day and year first above written.

WITNESS:                            Seller: Paradigm East Hanover, LLC

_____             By: _____
                                    David Kushner, Managing Member

_____             By: _____
                                    Wayne Sturman, Managing Member

                                    77 Charters, Inc

                                    By: _____
                                        Sam Tawfik, President and CEO

_Patricia O'Donnell_

Buyer:  AvalonBay Communities, Inc.

By: _____

Ronald S. Ladell, Senior Vice President

Acknowledgments

STATE OF NEW York, COUNTY OF Westchester SS:
    I CERTIFY that on Nov. 12, 2014 David Kushner personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW York, COUNTY OF Westchester SS:
    I CERTIFY that on November 12, 2014, Wayne Sturman personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ____, _____ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW JERSEY, COUNTY OF Middlesex SS:
    I CERTIFY that on October 30, 2014, Ronald S. Ladell personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

*Patricia Diane O'Donnell*

RECORD AND RETURN TO:       Carleton R. Kemph, Esq.
                            6 Hampshire Court
                            Springfield, New Jersey 07081.

MICHAEL O'MARA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6250397
Qualified in Westchester County
My Commission Expires October 24, 2015

MICHAEL O'MARA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6250397
Qualified in Westchester County
My Commission Expires October 24, 2015

[1005158-2]                 39

Acknowledgments

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ____, _____ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.


_____

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ____, _____ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.


_____

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ____, _____ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.


_____

STATE OF NEW JERSEY, COUNTY OF _Middlesex_____ SS:
    I CERTIFY that on _October 30, 2014_, Ronald S. Ladell personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

_Patricia Diane O'Donnell_

RECORD AND RETURN TO:    Carleton R. Kemph, Esq.
        6 Hampshire Court
        Springfield, New Jersey 07081.

Acknowledgments

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ___, _____ personally came before me and stated
to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

_____

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ___, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

_____

STATE OF ~~NEW~~ Florida, COUNTY OF Miami-Dade _____ SS:
    I CERTIFY that on Nov. 5, 2014, Sam Tawfik personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

JENNY R. CAMARA
Notary Public - State of Florida
My Comm. Expires May 17, 2018
Commission # FF 096900
Bonded Through National Notary Assn.

STATE OF NEW JERSEY, COUNTY OF Middlesex _____ SS:
    I CERTIFY that on October 30, 2014, Ronald S. Ladell personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

*Patricia Diane O'Donnell*

RECORD AND RETURN TO:    Carleton R. Kemph, Esq.
                               6 Hampshire Court
                               Springfield, New Jersey 07081.

EXHIBIT 19.3A

DISCHARGE OF MEMORANDUM OF CONTRACT

This is a Discharge of Memorandum of Contract (this "Discharge") dated as of October __, 2014 between Paradigm East Hanover, LLC, a New Jersey limited liability company, having an address at c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168 and 77 Charters, Inc., a Delaware corporation, having an address at c/o SAT Investment FLP, 300 Southpoint Drive, Unit LPH-2, Miami Beach, Florida 33139 (collectively, "Seller") and AvalonBay Communities, Inc., a Maryland Corporation having an office at 517 Route 1 South, Suite 5500, Iselin, New Jersey 08830 ("Buyer" and, collectively with Seller, the "Parties").

PRELIMINARY STATEMENT

Seller and Buyer have entered into a (i) Purchase and Sale Contract as of October __, 2014 ("Contract") pursuant to which Seller has agreed to sell, and Buyer has agreed to purchase certain real property lying, situate and being in the Municipality of East Hanover ("Municipality"), County of Morris and State of New Jersey, known as Block 99, Lot 4.02 on the Tax Map of the Municipality and more particularly described on Schedule "A" annexed ("Property"), for the price and upon the terms and conditions set forth in the Contract, and (ii) a Memorandum of Contract dated October __, 2014 (the "Memorandum") which was recorded on ____, _____ in Book _____ at Page _____, concerning the existence of the Contract.

NOW THEREFORE, in order to give notice to the world of the termination of the Contract and Memorandum with respect to the Property, the Parties have agreed to execute, deliver and record this Discharge to confirm that the Property is no longer subject to the Memorandum and this Discharge is authorized to be recorded in the Clerk's office.

IN WITNESS WHEREOF, the Parties have executed this Discharge as of the date set forth above.

Buyer: AvalonBay Communities, Inc.

By: _____

Ronald S. Ladell, Senior Vice President

Seller: Paradigm East Hanover, LLC

By: _____

David Kushner, Managing Member

By: _____

Wayne Sturman, Managing Member

77 Charters, Inc

By: _____

Sam Tawfik, President and CEO

EXHIBIT 19.3A

DISCHARGE OF MEMORANDUM OF CONTRACT

This is a Discharge of Memorandum of Contract (this "Discharge") dated as of October __, 2014 between Paradigm East Hanover, LLC, a New Jersey limited liability company, having an address at c/o Paradigm Capital Group, 380 Lexington Avenue, Suite 2020, New York, New York 10168 and 77 Charters, Inc., a Delaware corporation, having an address at c/o SAT Investment FLP, 300 Southpoint Drive, Unit LPH-2, Miami Beach, Florida 33139 (collectively, "Seller") and AvalonBay Communities, Inc., a Maryland Corporation having an office at 517 Route 1 South, Suite 5500, Iselin, New Jersey 08830 ("Buyer" and, collectively with Seller, the "Parties").

PRELIMINARY STATEMENT

Seller and Buyer have entered into a (i) Purchase and Sale Contract as of October __, 2014 ("Contract") pursuant to which Seller has agreed to sell, and Buyer has agreed to purchase certain real property lying, situate and being in the Municipality of East Hanover ("Municipality"), County of Morris and State of New Jersey, known as Block 99, Lot 4.02 on the Tax Map of the Municipality and more particularly described on Schedule "A" annexed ("Property"), for the price and upon the terms and conditions set forth in the Contract, and (ii) a Memorandum of Contract dated October __, 2014 (the "Memorandum") which was recorded on ____, _____ in Book _____ at Page _____, concerning the existence of the Contract.

NOW THEREFORE, in order to give notice to the world of the termination of the Contract and Memorandum with respect to the Property, the Parties have agreed to execute, deliver and record this Discharge to confirm that the Property is no longer subject to the Memorandum and this Discharge is authorized to be recorded in the Clerk's office.

IN WITNESS WHEREOF, the Parties have executed this Discharge as of the date set forth above.

Buyer: AvalonBay Communities, Inc.

By: _____
        Ronald S. Ladell, Senior Vice President

Seller: Paradigm East Hanover, LLC

By: _____
        David Kushner, Managing Member

By: _____
        Wayne Sturman, Managing Member

77 Charters, Inc

By: _____
        Sam Tawfik, President and CEO

STATE OF NEW _York_, COUNTY OF _Westchester_ SS:
    I CERTIFY that on _Nov. 12_, _2014_, _David Kushner_ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) was the maker of the attached instrument; and,
    (b) executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW _York_, COUNTY OF _Westchester_ SS:
    I CERTIFY that on _Nov. 12, 2014_, _Wayne Sturman_ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, ____, _____ personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

STATE OF NEW JERSEY, COUNTY OF _Middlesex_ SS:
    I CERTIFY that on _October 30_, _2014_, Ronald S. Ladell personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    (a) was the maker of the attached instrument; and,
    (b) executed this instrument as his/her own act duly authorized by the represented entity.

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

_Patricia Diane O'Donnell_

MICHAEL O'MARA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6250397
Qualified in Westchester County
My Commission Expires October 24, 2015

MICHAEL O'MARA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6250397
Qualified in Westchester County
My Commission Expires October 24, 2015

STATE OF NEW _____, COUNTY OF _____ SS:
        I CERTIFY that on _____, ____, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
        (a) was the maker of the attached instrument; and,
        (b) executed this instrument as his/her own act duly authorized by the represented entity.

                                                    _____

STATE OF NEW _____, COUNTY OF _____ SS:
        I CERTIFY that on _____, ____, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
        (a) Was the maker of the annexed instrument; and,
        (b) Executed this instrument as his/her own act duly authorized by the represented entity.

                                                    _____

STATE OF NEW _____, COUNTY OF _____ SS:
        I CERTIFY that on _____, ____, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
        (a) Was the maker of the annexed instrument; and,
        (b) Executed this instrument as his/her own act duly authorized by the represented entity.

                                                    _____

STATE OF NEW JERSEY, COUNTY OF *Middlesex* \ SS:
        I CERTIFY that on *October 30*, *2014*, Ronald S. Ladell personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
        (a) was the maker of the attached instrument; and,
        (b) executed this instrument as his/her own act duly authorized by the represented entity.

                                                    *Patricia Diane O'Donnell*

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, \_\_\_\_\_, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) was the maker of the attached instrument; and,
    (b) executed this instrument as his/her own act duly authorized by the represented entity.


STATE OF NEW _____, COUNTY OF _____ SS:
    I CERTIFY that on _____, \_\_\_\_\_, _____ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.


STATE OF ~~NEW~~ _Florida_, COUNTY OF _Miami-Dade_ SS:
    I CERTIFY that on _NOV. 5_, _2014_ _Sam Towfik_ personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) Was the maker of the annexed instrument; and,
    (b) Executed this instrument as his/her own act duly authorized by the represented entity.

DENNIS OMANI
Notary Public - State of Florida
My Comm. Expires May 17, 2018
Commission # FF 096900
Bonded Through National Notary Assn.

STATE OF NEW JERSEY, COUNTY OF _Middlesex_ SS:
    I CERTIFY that on _October 30_, _2014_, Ronald S. Ladell personally came before me and
stated to my satisfaction that this person (or if more than one, each person):
    (a) was the maker of the attached instrument; and,
    (b) executed this instrument as his/her own act duly authorized by the represented entity.

PATRICIA DIANE O'DONNELL
Commission # 2403824
Notary Public, State of New Jersey
My Commission Expires
January 13, 2016

_Patricia Diane O'Donnell_